682 P.2d 618

**STATE of Idaho, Plaintiff-Respondent,**

v.

**David Lamar NIELD, Defendant-Appellant.**

**No. 15218.**

Supreme Court of Idaho.

June 6, 1984.

Gaylen L. Box, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Steven W. Berenter, Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Chief Justice.

The appeal to the Court of Appeals involved a review of the sentence imposed upon the defendant, David Lamar Nield, for a sexual assault upon a ten-year-old girl. The defendant was sentenced by the district court to the custody of the Board of Corrections for an indeterminate period not exceeding ten years. Before the Court of Appeals, the defendant contended that the district judge did not adequately state the reasons for the sentence imposed, and that the sentence was excessive.

We granted the Petition for Review pursuant to I.A.R. 118(b)(2) to review the sole issue of whether a district court must state of record the reasons for the sentence imposed. In all other respects, the decision of the Court of Appeals remains undisturbed.

The Court of Appeals examined this issue in view of their previous decision in *State v. Tisdale*, 103 Idaho 836, 654 P.2d 1389 (Ct.App.1982), wherein the Court of Appeals required that the sentencing court "indicate of record his reasons for the sentence then imposed." *Id.* at 838, 654 P.2d at 1390. In applying the *Tisdale* standard to the case at bar, the Court of Appeals stated that the district court's oral statements made on the record at the conclusion of the hearing and in the presence of the defendant, were sufficient to satisfy the *Tisdale* standard.

In reaching this decision, the Court of Appeals erroneously failed to consider *Tisdale* to have been overruled by this Court in *State v. Osborn*, 104 Idaho 809, 663 P.2d 1111 (1983). In *Osborn* we stated, and again we reiterate, "that while the setting forth of reasons for the imposition of a particular sentence would be helpful and is encouraged, it is not mandatory." *Id.* at 810, 663 P.2d at 1112; *see also State v. Brewster*, 106 Idaho 145, 676 P.2d 720 (1984). Henceforth, this is the law of Ida-

ho, and all cases holding otherwise are hereby overruled.

Consistent with these views, we hold that the sentencing judge was not mandated to set forth the reasons for the imposition of the defendant's sentence. Thus, the sentence imposed by the district court is affirmed and, consistent with the holding of the Court of Appeals, the judgment of the district court in all other respects is affirmed.

SHEPARD and BAKES, JJ., concur.

HUNTLEY, Justice, dissenting.

I must respectfully dissent from the majority opinion based upon second thoughts I have had since I authored Osborne II, *supra*. A statement of the Courts reasons for imposition of sentence is certainly a necessary predicate for meaningful appellate review of the sentence. It is clear that such a review cannot proceed if the appellate court is not informed as to the factual basis for the sentence.

In the American Bar Association publication entitled Standards Relating to Appellate Review of Sentencing, Section 2.3(c) (1968) the commentary sets forth the following rationale for requiring a statement of reasons:

"In addition to the aid that a statement of reasons by the sentencing judge will give to reviewing courts, there are many independent reasons for requiring such a statement. In the first place, 'a good sentence is one which can be reasonably explained.' Youngdahl, *Remarks Opening the Sentence Institute Program, Denver, Coloradod* 35 F.R.D. 3897, 388 (1964). Compare Wyzanski, *A Trial Judge's Freedom and Responsibility*, 65 Harv.L.Rev. 1281, 1292–93. An attempt by the sentencing judge to articulate his reasons for a sentence in each case should in itself contribute greatly to the rationality of sentences. A related point is that such a requirement should serve to focus the sentencing judge on the discreet issues involved in framing different parts of the same sentence. See, e.g., PROPOSED N.Y. PENAL LAW,

Study Bill, Senate Int. 3918, Assembly Int. 5376, pp. 281, 286 (1964).

A second reason for requiring such a statement of reasons is that it can have great value to corrections authorities if the sentence results in a commitment. This principle has been recognized in New Jersey by the following provision: 'As part of such presentence report and before the submission thereof to the institution to which the offender is committed, the sentencing judge shall include therein a brief statement of the basic reasons for the sentence so imposed by him.' N.J. SUPER. AND COUNTY CTS. (CRIM.) R. 3:7–10(b). See also the MODEL SENTENCING ACT § 10:

> The sentencing judge shall, in addition to making the findings required by this act, make a brief statement of the basic reasons for the sentence he imposed. If the sentence is a commitment, a copy of the statement shall be forwarded to the department or institution to which the defendant is committed.

Compare CAL. PENAL CODE § 1203.01. Occasionally, the comments of the prosecuting attorney are included in such a transmission, both where the sentencing judge fixes the minimum sentence, see NEV. CODE ANN. § 176.180(3) (1961), and where an Adult Authority performs that function. See CAL. PENAL CODE § 1203.01; WASH. CODE ANN. §§ 9.95.031–32 (1961); Hayner, *Sentencing by an Administrative Board*, 23 LAW & CONTEMP. PROB. 477, 478–82, 488–89 (1958).

Thirdly, a statement by the sentencing judge explaining to the defendant the reasons for his commitment can in many cases have therapeutic value. See Robinson, *The Defendant Needs to Know*, FED. PROB., Dec. 1962, p.3. Subsection (c) thus provides that the statement of reasons should in most cases be given for the record at the time sentence is imposed. Of course, care must be taken in the manner in which this is done:

> [I]t is equally important not to go to the other extreme and create bitterness by lecturing and reprimanding defendants at length on their long records or terrible crimes, because a bitter defendant is less likely to emerge from prison a rehabilitated member of society.

Youngdahl, *Remarks Opening the Sentencing Institute Program, Denver, Colorado*, 35 F.R.D. 387, 388 (1964). Subsection (c) also recognizes the possibility that in a given case an explanation to the defendant personally will do more harm than good. For this reason, the provision would leave to the discretion of the sentencing judge the option of not explaining the sentence to the defendant. In such a case, the judge still should explain the basis for his sentence, both for transmission to the reviewing court in the event that the defendant appeals and for transmission to corrections authorities in the event that the sentence involves a commitment. The manner in which this statement should be made is intentionally left open in the belief that it should be for each judge to develop the most efficient method to suit his own working habits.

Finally, of course, a statement of reasons will be invaluable as an aid to the reviewing court. In fact, it is difficult to see how meaningful review can occur, except perhaps in extreme cases, where the appellate court is left completely in the dark as to why the sentence under review was imposed. Cf. *Kent v. United States*, 383 U.S. 541, 561, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). It is the practice in England, though not required by statue, for such reasons to be before the appellate court. See MEADOR REPORT, Appendix C, pp. 110, 116–17, 128, *infra*. It is likewise the practice in most European countries. See *Appellate Review of Sentences, Hearings on S. 2722 Before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary*, 89th Cong., 2d Sess. 86–100 (1966) (Statement of Professor Mueller). Suggestions in this country have varied from a statutory require-

ment that reasons be stated in every case, see S. 2722, Appendix B, *infra*, to statutory provision authorizing the appellate court to call for reasons when it so desires, see Massachusetts statute, Appendix A, *infra*, to statutory silence on the point. See Arizona statute, Appendix A, *infra*. See generally Note, *Statutory Structures for Sentencing Felons to Prison*, 60 COLUM.L.REV. 1134, 1165 n.210 (1960). The provision proposed here would require a statement of reasons to support every sentence, including, of course, any modification of the original disposition or other re-sentence. See e.g., *People v. Krzywosz*, 23 App. Div.2d 957, 259 N.Y.S.2d 970, 971 (1965).

Most of our district judges comply with the above and foregoing standards and both the quality and the efficiency of our judicial system would be improved if all judges conducted their sentencing procedures in conformance with the standards.

BISTLINE, Justice, dissenting.

## I.

### Dismiss the Petition as Improvidently Granted

The State of Idaho, through the office of the attorney general, petitioned this Court to review the decision of the Court of Appeals which issued on July 12, 1983, *State of Idaho v. Nield*, 105 Idaho 153, 666 P.2d 1164 (Ct.App.1983). The Court of Appeals stated the issue before it as being whether the district court adequately stated reasons for the sentence imposed and whether that sentence was excessive. That court concluded that the ten-year sentence was not an abuse of discretion. It further concluded that the district judge's "oral statements made on the record, were sufficient to satisfy the Tisdale requirement." *State v. Tisdale*, 103 Idaho 836, 654 P.2d 1389 (Ct.App.1982).

There was no issue drawn in proceedings below in this case that the reasons for the particular sentence should have been incorporated into separately drawn findings. In fact, the State of Idaho itself relied on *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982):

"Finally, the appellant argues that the sentencing court failed to adequately set forth its reasons for imposing sentence. The record reflects, however, that the sentencing judge carefully reviewed appropriate criteria for sentencing and set forth in explicit detail those factors considered in exercising his discretion in imposing sentence. (R., pp. 54–56). The record further indicates that the court took full account of the mitigating evidence presented by the defense, and was fully cognizant of the rehabilitative needs of the appellant. Again, it must be emphasized that for purposes of appellate review, the appropriate measure of the term of confinement for the appellant is three and one third years. Further, in deference to the discretionary authority vested in Idaho trial courts, the court on appeal is not to substitute its view for that of a sentencing judge where reasonable minds might differ. *State v. Toohill, supra.* In view of the serious nature of the offense committed, the character and background of the appellant, and the court's consideration of the need for rehabilitation, the State submits the resultant sentence in the case at bar is reasonable to the extent it appeared necessary at the time of sentencing to accomplish the primary objective of protecting society, and to achieve the related goals of deterrence, rehabilitation, or retribution applicable to this case. Because no clear abuse of discretion has been demonstrated by the appellant, the sentence imposed by the district court should be affirmed on appeal."

Respondent's Brief, pp. 17–18.

Nor did the appellant, Nield, raise as an issue any contention that an oral statement of reasons, made on the record, was not a sufficient procedure. As an Issue Presented on Appeal, Nield listed: "II. DID THE SENTENCING JUDGE ADEQUATELY SET FORTH ON THE RECORD THE REASONS FOR IMPOSING A TEN-YEAR

SENTENCE." The brief went on to argue only that:

"The Reporter's Transcript contains three and one-half pages of the court's comments concerning the reasons for imposing the ten-year indeterminate term prison sentence. (R. pg. 54–56). The court noted an early 'rebellion against authority'. The basis for this conclusion was essentially the testimony of the defendant's father concerning his running away from home at the age of sixteen. The trial court also noted that at age twelve the defendant was seduced by an older woman and then 'continued that relationship'. The court noted that the defendant, even prior to his involvement with drugs at age sixteen, had not shown much responsibility, and was therefore an antisocial. In essence, a child's immaturity is the rationale for an adult's sentence."

Appellant's Brief, p. 11.

The Court of Appeals' opinion was well-reasoned. Nield, the appellant, and the only party aggrieved by the decision affirming the district judge, made no further attempt to obtain any reduction of his sentence. His attorney, faithful to his obligation, had presented his contentions to the Court of Appeals. That court ruled against Nield. That should have been the end of it—both for Nield and his attorney.

But, it was not to be the end. The Court of Appeals' opinion mentioned the plurality opinion issued by the Idaho Supreme Court in *State v. Osborn,* 104 Idaho 809, 633 P.2d 1111 (1983).[1] The office of the attorney general, apparently extra-sensorily perceiving that this Court would welcome an opportunity to exert itself in that regard petitioned this Court for review—notwithstanding that it had prevailed in the Court of Appeals and notwithstanding that the issue that the attorney general would request this Court to consider had not been raised, and thus preserved. A principle so well-established as to be unneedful of citation is that an appellate court, including (one would like to think) a state's supreme court, will not consider issues in the abstract, and certainly not issues which are attempted to be raised for the very first time. The Petition for Review stated only:

"This petition is based on the ground that the Court of Appeals has decided a question of substance probably not in accord with a governing decision of the Idaho Supreme Court and the State is aggrieved by the erroneous decision of the Court of Appeals, for the reasons to be detailed in the respondent's brief in support of this petition for review, which will be filed pursuant to Rule 118, Idaho Appellate Rules."

In due time a supporting brief was filed which delineated the single issue which the attorney general's office desired to lay before this Court: "WHETHER THE SUPREME COURT OF IDAHO, IN ITS PLURALITY DECISION IN *STATE V. OSBORN,* # 14333, OVERRULED *STATE V. TISDALE,* 103 IDAHO 836, 654 P.2d 1389 (IDAHO APP. 1982)." It bears repeating that this was not an issue which had been presented to the Court of Appeals. The Petition for Review should have been summarily denied. However, as the minutes of this Court reflect, three members of this Court saw fit to vote to grant the petition and so this case stayed in the system to the detriment of other cases accordingly set

---

1. Only Justice Bakes joined the opinion authored by Justice Huntley. The only other opinion issued in that case was the separate opinion of Bistline, J., concurring and dissenting. Neither Justice Shepard nor Chief Justice Donaldson concurred in Justice Huntley's opinion. Each concurred in the result, the result being that "The sentence imposed by the district court is affirmed." 104 Idaho at 811, 663 P.2d at 1113.

Bistline, J., then laboring under the belief that Justices Shepard and Donaldson were concurring in Justice Huntley's opinion, wrote "that in needlessly overruling *State v. Tisdale,* ... this Court may be doing a disservice to that court, and to the district courts as well." 104 Idaho at 811, 633 P.2d at 1113. As the State's brief in this case concedes in stating the issue, *infra,* the *Osborn* opinion was a plurality opinion. Whatever opinion Justices Shepard and Donaldson had was not reduced to writing. Whatever reason each entertained for not joining the opinion of Justice Huntley was not set forth.

**670**

back on the assembly line. The State's brief, authored by the Honorable Lynn E. Thomas, Solicitor-General, suggests the rationale by which the State declares itself a party aggrieved by the Court of Appeals opinion, notwithstanding that the State fully prevailed therein:

"Although the Court of Appeals upheld the appellant's sentence, the State is aggrieved by the circumstance that the Court of Appeals has announced a rule of procedure probably not in accord with applicable decisions of the Idaho Supreme Court. Rule 118(b)(2), I.A.R.; *State v. Osborn, supra*. On the face of it, it appears that this court has established one rule respecting the duties of trial judges at sentencing, while the Court of Appeals has set forth a different rule. Trial judges throughout the state, not knowing in advance which cases will be assigned to the Court of Appeals, have no guidance concerning which rule to follow. The potential for confusion in the administration of the criminal law arising from this state of the law is good reason for the court to consider the State an aggrieved party presenting an important question for review.

"Moreover, the court has supervisory powers reflected in Rule 118(b)(4) [2] and Rule 120 which authorizes the court to review decisions of the Court of Appeals on its own motion. This power should be exercised in the interest of clarifying an important point of law relating to procedure in the courts."

Respondent's Brief, pp. 7–8.

A majority of this Court departed from acceptable standards of appellate procedure in granting the petition. The State was *not* a party aggrieved in any manner, and was entirely without any standing to request of this Court that it pass on the

sole issue presented, especially where the best of poor reasons advanced is that "Trial judges throughout the state, not knowing in advance which cases will be assigned to the Court of Appeals, have no guidance concerning which rule to follow." Justice Huntley has already this day written that "Most of our district judges comply with [the American Bar Association Standards Relating to Appellate Review of Sentencing, Section 2.3(c) (1968)] and both the quality and the efficiency of our judicial system would be improved if all the judges conducted their sentencing procedures in conformance with the standards." Believing that Justice Huntley is eminently correct, and fully convinced that the Petition for Review should never have been granted, my first vote is to dismiss it as improvidently granted. No matter what the majority may do or say today, there is little doubt in my mind that our district judges and magistrates will continue to formulate and enunciate their reasons for imposing particular sentences. It will be a shame if today's majority opinion influences even one judge from doing that which in his conscience he or she knows is the right thing to do.

## II.

### A Good Sentence is One Which Can Be Reasonably Explained

It is with great admiration that I see Justice Huntley today reconsidering that which he authored in *Osborn II*, and now embracing the view that a statement of reasons for imposition of sentence is a necessary predicate for meaningful appellate review. He necessarily is also retreating from his concurrence with the majority opinion in *State v. Brewster*, 106 Idaho 145, 676 P.2d 720 (1984), insofar as is concerned that plurality statement from *Osborn II*, 104 Idaho at 810, 663 P.2d at 1112, "that

2. "Rule 118. Petition for review by the Supreme Court.—(a) ...
   (b) Criteria for Granting Petitions for Review by the Supreme Court ....
   ....
   (4) Whether the Court of Appeals has so far departed from the accepted and usual course

of judicial proceedings or so far sanctioned such procedure by a trial court as to call for the exercise of the Supreme Court's power of supervision;
...."
Respondent's Brief, n. 1, p. 8.

while the setting forth of reasons for the imposition of a particular sentence would be helpful, and is encouraged, it is not mandatory."

Anent Justice Huntley's opinion of today, it will be gratifying to the trial bench and bar to now know that there now are at least two members of this Court who acknowledge merit in the ABA standards. In *State v. Adams*, 99 Idaho 75, 577 P.2d 1123 (1978), Bistline, J., urged upon the Court the guidelines of the 1968 ABA Standards, and also Frankel, *Criminal Sentences: Law Without Order* (1973), and Dawson, *Sentencing*, 1969.

The troublesome thing about the majority opinion issued today is not only that it fails to serve any laudable purpose, but is destructive of the Court of Appeals' efforts to perform its sentence review function. No one of reason will expect any less from that court by reason of the gratuitous slap it receives today at the hand of this Court. Regrettably, however, in its goal of exhorting district judges to adhere to ABA standards, it may in a few instances be frustrated, although at the present time I cannot presently bring to mind a single district judge who will not both have, and express, reasons for a sentence meted out. If that is so, all the majority accomplish this day is the self-satisfaction one court gains from telling another court that *it* doesn't make any rules or set any standards. That which I wrote in *Osborn II* is again applicable:

"The Court of Appeals in fulfilling its function has determined that it would be helpful to have before it the facts and reasons which motivated the district court to reach a sentencing determination. In deference to that court's views as to how it will conduct its appellate review, with which I agree, I am not persuaded to interfere. Moreover, in the area of civil appeals this Court has made it clear that while one of the reasons for requiring court-made findings of fact and conclusions of law is to aid appellate review, another equally valid reason is so that the district judge can evaluate the

soundness and reasonability of his own decision as he makes it. In *Compton v. Gilmore*, 98 Idaho 190, 560 P.2d 861 (1977), we quoted with approval the words of Judge Maris, speaking for the Third Circuit Court of Appeals, whose language was:

" ' "The purpose of that rule is to require the trial judge to formulate and articulate his findings of fact and conclusions of law in the course of his consideration and determination of the case and as a part of his decision making process, so that he himself may be satisfied that he has dealt fully and properly with all the issues in the case before he decides it and so that the parties involved and this court on appeal may be fully informed as to the bases of his decision when it is made." ' 98 Idaho at 194, 560 P.2d at 865."

104 Idaho at 811, 663 P.2d at 1113.

Now, just how this Court can adhere to that doctrine in civil cases, and declare it inapplicable in criminal cases, completely escapes me.

### III.

### A Problem With Two Sets of Rules, One in Each Court?

As noted above, from the State's brief, "it appears that this court has established one rule respecting the duties of trial judges at sentencing, while the Court of Appeals has set forth a different rule." The alleged existence of two sets of rules is said by the State to be a potential for the creation of confusion which will beset trial judges—for which reason the office of the attorney general rides forth in the manner of Don Quixote to combat the problem. Is there really a problem? The answer is, of course, "no, there is not." Other than capital offenses, sentence review will be in the province of the Court of Appeals. Is there any reason why the court which will hear sentence appeals should not be allowed to require that it be furnished with the rationale of the sentencing court? Again, the answer is a resounding "no."

If there has been any confusion relative to standards of sentencing, all of it existed prior to the existence of the Court of Appeals, and it did exist. An exhaustive history of sentencing in this Court is found in *State v. Adams*, 99 Idaho at 77–82, 577 P.2d at 1125–1130 (Bistline, J., dissenting), following which was set forth the following summary:

"In sum, we have two lines of cases lying side by side in the pages of the Idaho Reports. In the first, the Court acknowledges an affirmative duty to make a thorough review of the record, **to insist upon reasoned consideration of all relevant factors by the sentencing court,** and to modify the sentence imposed whenever such modification is necessary in order to avoid injustice to the individual or to insure the even-handed administration of justice throughout the State.

"The second line of cases, on the contrary, manifests a decidedly hands-off approach, puts upon the defendant the affirmative burden of showing a *clear* abuse of trial court discretion and then makes that burden impossible to carry by saying that no such abuse will 'ordinarily' be found so long as the sentence imposed is within the limits fixed by statute.

"For myself, I have no problem in choosing the first as the better line of cases, the one most in tune with the Constitution and statutes of Idaho and this Court's role as an appellate tribunal. The second line of cases, in the words of the American Bar Foundation study, denotes a 'failure of the system to achieve the goal of equal justice under law.' When such a system stands uncovered, 'it is likely to undermine public confidence in the administration of criminal justice.' And, whether the public knows of it or not, the system cannot help but have 'severe demoralizing and anti-rehabilitative effects on prisoners who receive harsher sentences than others in comparable situations.' In short, it stands for an unconscionable 'willingness often to give administrative convenience a higher priority than the proper disposition of the individual offender.' Dawson, Sentencing (1969) at 216.

"This Court has the power to and should foster a sentencing system which dispenses individualized justice and yet avoids unjustifiable disparity. Wholeheartedly it should endorse the practice of having 'sentencing councils' meet in advance of sentencing so that the sentencing judge may have the benefit of the collective wisdom of his peers. Such a procedure, I understand, is already in some use in the Sixth Judicial District."

*State v. Adams*, 99 Idaho 75, 82, 577 P.2d 1123, 1130 (1978) (italics original) (bold supplied) (footnote omitted).

Thus, it is seen that, without any intervention by the office of the attorney general, long prior to our having a two-tiered appellate court system, there were in existence in our criminal jurisprudence two lines of cases, one of which embodied the principles of sentence review advocated by the Court of Appeals. A court which has two divergent lines of cases does have, of course, a veer offense of sorts. It can go either way as its fancy may take it. And it has done so. The same Court which turned away the appellant in *Adams* experienced no trouble in reducing an armed robbery sentence from 20 years to 12 years, *State v. Shideler*, 103 Idaho 593, 651 P.2d 527 (1982). The *Shideler* appellant was subjected to one line of authority, the *Adams* appellant to the other. In *Adams*, the Court simply observed that "The two year sentence imposed by the district court is well within the statutory maximum sentence of three years...." Of course it was. In *Shideler*, utilizing the other line of authority, this same Court, ignoring that the 20-year sentence imposed was well within the maximum limit (life imprisonment), declared that "this court must examine the circumstances of each case to determine whether the punishment imposed is excessive." 103 Idaho at 594, 651 P.2d at 528. Two pages later it was concluded that because this was a first felony, and the defendant had accepted responsibility for

his acts together with his family and employers having shown considerable interest in his future, that the sentence had to be reduced in the furtherance of justice. The *Adams* appellant "at the time of sentencing was attempting to hold down two jobs and was apparently making progress in paying off the family's accumulated debts. As his wife stated: "In my opinion, sitting in jail would be a waste of time. Time that Cliff could be working and taking care of our personal debts." 99 Idaho at 79, 577 P.2d at 1127 (Bistline, J., dissenting). The appellant was voluntarily attending therapy sessions at "Parents Anonymous; he had no prior criminal record." 99 Idaho at 75–76, 577 P.2d at 1123–1124.

All of which brings on the conclusion that, yes, there has been a problem, and that problem was internal to this Court. No, there is no problem with the Court of Appeals' belief that it should be informed, "on the record" how the sentencing court arrived at the sentencing decision. Other than that I first would dismiss the petition as improvidently granted, I dissent from the Court's action taken in this case.

## IV.

### The Real Party in Interest, The Idaho Court of Appeals

The majority states that "the Court of Appeals erroneously failed to consider *Tisdale* to have been overruled by this Court in *State v. Osborn...*." The Court of Appeals did not err, however. Rather, the majority today errs in making the statement. Axiomatic in this appellate business is that (in Idaho) three beats two. But an opinion of two justices is indeed the plurality opinion which any opinion by two justices is. Apparently three justices of the Court are this day adopting as their own— without explicitly saying so—the language in *Osborn* from which today Justice Huntley retreats. This they can do, but a strange vehicle has been used to get there.

At stake here is the integrity of the Court of Appeals, wholly unrepresented except for the commendable effort of Mr. Nield's attorney—neither Mr. Nield nor his attorney having any real reason to resist the attorney general's effort to relegate the Court of Appeals to its perceived proper place in the judicial system.

Out of respect for Mr. Box, who clearly devoted his own time in defense of the Court of Appeals, I submit the following portions of an extremely well-written brief:

"The conclusion that the State is an aggrieved party is suspect from the beginning, in that it was Nield's prison term that was affirmed.

"This Court's 'overruling' language in *Osborn*, in conjunction with its accepting review upon the petition of one who is technically not an aggrieved party sends out a curious invitation. Is the Court looking for an opportunity to rebuke the Court of Appeals, or is it looking for a chance to lend meaningful guidance to the bench and bar in sentencing procedure and review?

"The tenor of the State's petition is that this Court should rebuke the Court of Appeals for not acknowledging that *Tisdale* has been overruled. In doing so, appellant submits that the State is attempting to bootstrap the *Osborn* decision into something more than it really is. If the Court accepts the State's invitation, the progress that has been made by this Court, as well as the Appellate Court, in the development of meaningful appellate review of sentences will be jeopardized. The State cast the issue as one involving a conflict over rulemaking authority, and failure to respect this Court's pronouncements. It is respectfully submitted that there is far more to be gained by addressing the issues of sentencing procedure and appellate review thereof than there is by embroiling this case in jealousy over rule-making authority. Through the following analysis, it is quite clear that the Appellate Court has accurately interpreted the language of *Osborn* and appropriately applied the views expressed therein in the *Nield* decision. The Appellate Court is not in defiance of this Court's decisions, nor has there been any encroachment

upon the rule-making power of this Court.

. . . .

"In *Tisdale,* the District Judge gave *no reasons* for his sentencing decision. 103 Idaho at 837, 654 P.2d 1389. It was Tisdale's contention that 'the [district] court erred by failing to state reasons for the sentence and that the sentence was excessive'. According to the Court:

" 'These contentions, taken together, frame the dispositive question in this appeal—whether we should undertake to review a sentence for excessiveness when no reasons for the sentence have been stated of record.' 103 Idaho at 837, 654 P.2d 1389.

"The Appellate Court thus came face to face with the issue of the necessity for specification of reasons by the sentencing judge. It vacated Toohill's sentence and remanded for resentencing, holding that the District Court:

" '*shall* indicate of record his reasons for the sentence then imposed.' 103 Idaho at 838, 654 P.2d 1389. (Emphasis added).

"The *Tisdale* ruling was limited in retrospective application to cases pending on appeal which had specified the absence of reasons underlying a sentencing decision as an issue on appeal. Implications of the decision were further limited in application to only felony cases.

"Thus, Idaho law fell in line with the American Bar Association's *Standards Relating to Sentencing Alternatives and Procedures* (§ 5.6). Idaho law also fell in line with the progressive notion that sentencing review involves a reason-oriented analysis.

"The approach advanced by the Appellate Court has considerable support in developing case law and judicial commentaries. In *People v. Watkins* [200 Colo. 163], 613 P.2d 633 (1980), the Colorado Court noted that: 'If appellate review of felony sentences is to satisfy its stated objectives, it requires that the sentencing judge state on the record the basic reasons for imposing sentence'. In *People*

*v. Horne,* 619 P.2d 53 (Colo.1980), the Colorado Court further held that 'where a sentence of extended duration is imposed, the record must establish a clear justification for the trial judge's actions'. In that case the sentence was vacated and sent back for resentencing due to an inadequate record. Also in Colorado, the Supreme Court held:

" 'Since the record fails to support the trial court's apparent conclusion that the defendant is beyond hope of rehabilitation, and fails to set out any facts justifying imposition of a consecutive sentence, we hold that that aspect of the sentence constituted an abuse of discretion.' *People v. Edwards,* 598 P.2d 126 (Colo.1979).

"The Montana Supreme Court has adopted a rule requiring specification of reasons for all prison sentences, stating:

" 'We see no reason why a defendant sentenced to prison is not also entitled to know precisely why the sentencing judge chose the particular sentence involved.' *State v. Stumpf,* 609 P.2d 298 (Mont.1980).

The Montana Court also noted that:

" '. . . Several jurisdictions require sentencing courts to state on the record the reasons for selecting a particular sentence. Some of these are controlled by statutes requiring the sentencing courts to disclose its reasons for sentencing (e.g. Pennsylvania, Louisiana, Illinois, Wisconsin, and Oregon). Others require it under the criminal procedure rules of the respective states (e.g. Pennsylvania, Iowa, and New Jersey) . . . .' 609 P.2d at 298, 299.

"In addition, an Arizona statute requires specification of reasons for imposing consecutive sentences, *ARS § 13–708, State v. Sanchez,* 635 P.2d 1217 (Ariz.App.1981), and California apparently requires a statement of reasons for granting or denying probation, *People v. Arceo,* (1979), 3d Dist.), 95 Cal.App.3d 117, 157 Cal.Rptr. 10, as quoted in *Campbell, Law of Sentencing,* 1978, supra.

"Several instances may be found where cases have been remanded for lack of an adequate record to facilitate appellate review. *See* e.g. *United States v. Latimer*, (1969 CA 6 Ohio), 415 F.2d at 1288; *United States v. Ramos*, (1978 CA 2 NY), 572 F.2d 360, and *People v. Horne*, supra."
Appellant's Brief, pp. 4–6, 14–16.

### Summary

There was no genuine basis for the attorney general's Petition for Review, and no justifiable reason for the majority to grant the petition. There is no reason for the majority's failure to respond to the brief voluntarily laid before the Court by Mr. Box. There exists no valid reason for this Court to exert its paramount authority over the Court of Appeals in the area of sentence review. The answer very well may be that those interested will intervene on behalf of the Court of Appeals—as has been done in other states, cited in Mr. Box's brief, where the legislature has done that which the Court of Appeals saw fit to do in the sound administration of criminal justice—needlessly and heedlessly nullified by today's majority.