699 P.2d 1371

Arlene F. BROWN,
Plaintiff-Respondent-Cross
Appellant,

v.

George T. FRITZ and Phyllis M. Fritz,
husband and wife, Defendants-Appel-
lants-Cross Respondents,

and

Daniel Manning, Does I Through V, In-
clusive, and All Other Persons Un-
known and Claiming Any Right, Title,
Estate, Lien or Interest In the Real
Property Described In the Complaint
Adverse to Plaintiff's Ownership, or
Which Constitute Any Cloud of Plain-
tiff's Title Thereto, Defendants.

No. 15311.

Supreme Court of Idaho.

May 2, 1985.

Kevin F. Trainor and John A. Doerr, Twin Falls, defendants, appellants-cross respondents.

Rand L. Peebles, Ketchum, Charles L. Hay, Cascade, for plaintiff-respondent-cross appellant.

SHEPARD, Justice.

This is an appeal from a judgment which allowed damages for the negligent infliction of emotional distress. Plaintiff-respondent Brown brought the action against the Fritzes, from whom she purchased real property, for misrepresentation of title, misrepresentation of the condition of the property, and negligent infliction of emotional distress. Daniel Manning was also joined as a defendant, in order to clear title to the property in question. Following trial by jury, title was quieted in plaintiff and she was awarded damages, both for the misrepresentation of the condition of the property prior to the sale and for negligent infliction of emotional distress. We reverse as to the only issue on appeal, that being the award of damages for negligent infliction of emotional distress.

■ Although many of the facts were hotly contested, since plaintiff prevailed at trial, we view the case in the light most favorable to her. *Higginson v. Westergard,* 100 Idaho 687, 604 P.2d 51 (1979); *Matter of Estate of Webber,* 97 Idaho 703, 551 P.2d 1339 (1976).

Brown was interested in buying a residence property in the vicinity of Hailey, Idaho. In the company of a realtor, she viewed the Fritz property in the Fritzes' absence. Brown and the realtor returned the following day while the Fritzes were at the residence. Defendant Fritz then displayed the property to Brown and made several representations relating to the insulation, the number of septic tanks, and the boundary lines of the property. Brown relied upon these representations and upon those made in the listing agreement, including that the lot size was 7.3 acres. Brown subsequently purchased the house for $105,000.

Following Brown's taking possession of the residence, a large number of defects became apparent, indicating to Brown that Fritz had misrepresented the condition of the property. Among the more serious defects were the faulty design and the malfunction of the sewage system, which caused raw sewage to accumulate beneath the house and which, because of the winter weather, could not be immediately remedied. Also, shortly after Brown occupied the property, defendant Manning approached her and informed her that, prior to the Brown purchase, Fritz had sold roughly two of the 7.3 acres to Manning.

There is no question but that Brown felt required to spend approximately $10,000 to repair the deficiencies of the property. There is also no question but that Brown felt compelled to dispose of the property. She sold that portion to which she could give clear title for approximately $150,000, and she signed a contract with the new purchaser to sell the two acres in dispute for $25,000, once title could be cleared.

Brown brought an action against the Fritzes and Manning for damages for fraudulent misrepresentation, for breach of contract, for negligent infliction of emotional distress, for punitive damages, and to quiet title in herself to the disputed two acres.

During trial, the district judge ruled that the plaintiff's evidence was not sufficient

to warrant submission to the jury of plaintiff's claim for punitive damages. Hence, the jury was not instructed as to punitive damages and the special verdict form contained no provision for an award of punitive damages. Although plaintiff has cross-appealed on other issues, there is no assertion of error regarding this withholding of the punitive damage claim from the jury. Also at trial, plaintiff stipulated that she was making no claims against Manning for punitive damages or damages for infliction of emotional distress. Hence, the action as it related to Manning involved only the quieting of title to the property and is not on appeal.

In response to the court's questions on the special verdict form, the jury found in favor of plaintiff Brown in the quiet title action and awarded her damages from Fritz on that claim in the amount of $625. The jury also found in favor of Brown on her claim against defendant Fritz of misrepresentation, and the jury set those damages at $2,100. Finally, the jury found that there had been negligent infliction of emotional distress by the Fritzes, and it awarded damages therefor in the amount of $15,000.

As earlier stated, defendants-appellants Fritzes' sole assertion of error is the award of damages for negligent infliction of emotional distress. The tort of infliction of emotional distress and the elements necessary to such a cause of action have been the subject of several recent cases before this Court, and these cases illustrate some disagreement among the Court's membership.

In *Summers v. Western Idaho Potato Processing*, 94 Idaho 1, 479 P.2d 292 (1970), Summers, an employee of defendant, was injured when part of her clothing became entangled in some machinery. She received workmen's compensation for that injury and then brought an action in effect for emotional distress arising from her clothing's having been torn off and her having been left nude before her fellow employees. The Court, in a cursory opinion, held that her recovery for physical injuries was barred by the workmen's compensation law and that, if she was seeking to recover for purely emotional trauma, unaccompanied by injury, there was no common law right of recovery.

In *Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 606 P.2d 944 (1980), the Court, as then constituted, was presented with a jury award of damages for breach of contract, an additional award for emotional distress, and a still additional award of punitive damages. On appeal, the Court reversed the damage awards for both emotional distress and punitive damages. There has been criticism of the *Hatfield* decision, *see Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 906, 665 P.2d 661, 670 (1983) (Bistline, J., concurring); *Rasmuson v. Walker Bank & Trust Co.*, 102 Idaho 95, 101, 625 P.2d 1098, 1104 (1981) (Bistline, J. specially concurring). It seems clear that the *Hatfield* opinion, insofar as the law of punitive damages is concerned, has been superseded by subsequent cases. *See Cheney v. Palo Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). Nevertheless, we deem it desirable, since only one member of the Court sat in *Hatfield*, to clearly adhere to or to overturn the *Hatfield* decision, insofar as it relates to damages for emotional distress.

*Hatfield* dealt with both the *intentional* infliction of emotional distress as a tort, and the tort of *negligent* infliction of emotional distress. The Court held that, even assuming that physical or constructive impact was not required for a successful suit for damages for *intentional* infliction of emotional distress, this tort "is generally held to lie only in the presence of outrageous intentional conduct on the part of the defendant . . . ," and there was no indication in *Hatfield* of such "level of outrageousness." 100 Idaho at 849–850, 606 P.2d at 953–954. As to the tort of *negligent* infliction of emotional distress, the Court noted that courts "almost universally

require that the actions of the defendant *cause some physical injury to the plaintiff* which accompanies the emotional distress," 100 Idaho at 851, 606 P.2d at 955 (emphasis added). Citing *Summers, supra,* the Court held that since there was no physical injury involved, the tort of negligent infliction of emotional distress did not lie, and therefore, the Court reversed the damages award for that tort.

The Court in *Hatfield* also sought to distinguish actions "asserted in connection with the *independent* torts of negligent or intentional infliction of emotional distress," and "claims ... asserted as part of the measure of recovery for some independent wrong perpetrated on the plaintiff by the defendant, such as a breach of contract." 100 Idaho at 846, 606 P.2d at 950, (emphasis supplied). As to actions for breach of contract, the Court held, "As a matter of law, then, the award could be based on the breach of contract only if such harm were within the contemplation of the parties at the time they formed the contract, and if the breach were wanton or reckless." The Court stated that the general rule from other jurisdictions is that upon a breach of contract, damages for emotional distress may be awarded "only when the breach is wanton or reckless *and* where ... such damages were within the contemplation of the parties at the time they formed the contract, Hadley v. Baxendale, 9 Ex. 34, 156 Eng.Rep. 145 (1854), *and* where the breach of contract also causes physical injury." (Emphasis added.) The Court also quoted the Restatement of Contracts § 341 (1932), indicating the necessity "that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss." 100 Idaho at 847, 606 P.2d at 951.

The Court in *Hatfield* then examined the award of damages for emotional distress resulting from a breach of a contract in light of whether the contract was "commercial" or "non-commercial," and stated,

"Evidence of the commercial nature of the contract may bear upon that question, but it does not absolutely decide it. The answer will always turn on the facts of the particular case." 100 Idaho at 847, 606 P.2d at 951. Evidently, the Court intended to indicate a distinction between "non-commercial" contracts, such as to perform a caesarean section, to bury a body, or to deliver a bride's trousseau; and the specific contract in the case before the Court, involving an agreement to auction goods. The Court stated:

"Nor did anything about the situation surrounding the formation of the contract indicate that either party contemplated emotional distress as a result of breach. Of course, the breach of any contract which the party considers important predictably will lead to some emotional distress. Life in the competitive commercial world has at least equal capacity to bestow ruin as benefit, and it is presumed that those who enter this world do so willingly, accepting the risk of encountering the former as a part of the cost of achieving the latter. Absent clear evidence to the contrary, we will not presume that the parties to a contract such as the one before us meant to ensure each other's emotional tranquility." 100 Idaho at 848, 606 P.2d at 952.

Hence, we suggest the Court's opinion in *Hatfield* could be read as suggesting several alternative grounds for the disallowance of damages for emotional distress under the circumstances of that case.

In *Rasmuson v. Walker Bank & Trust Co.,* 102 Idaho 95, 625 P.2d 1098 (1981), the Court had for consideration, among other matters, a cause of action for "damages for infliction of emotional suffering caused by the negligent bad faith and reckless trust management" of the defendant. Summary judgment on that cause of action was granted in favor of the defendant. The Court therein, citing *Hatfield,* stated, "The evidence of emotional distress in the case before us, standing unrefuted and

viewed most favorably to plaintiff, compels us to hold as a matter of law that the distress was not sufficiently severe to have justified preclusion of summary judgment on this issue." 102 Idaho at 101, 625 P.2d at 1104. It appears that such decision was rendered because there did not exist "extreme conduct," but the Court, citing the decision of the trial court, noted, "Mental suffering in the tort field is one thing. In the fiduciary and economic field, it is quite another." 102 Idaho at 101, 625 P.2d at 1104.

In *Davis v. Gage*, 106 Idaho 735, 682 P.2d 1282 (1984), the Court of Appeals was presented with the issue of a damage award for mental anguish resulting from the sellers' breach of a contract for the sale of commercial property. The damages for "intentional infliction of emotional distress" could have been held to arise either from the sellers' breach of the contract or from conduct of the sellers which was independent of the contract. The Court held, citing *Hatfield*, that "[a]n action for *intentional* infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress ... Severe emotional distress may be shown either by physical manifestation of the distress or subjective testimony." (Emphasis added.) The Court apparently excluded "physical manifestation" as a necessary element of the tort. As to severe emotional distress, the Court cited Restatement Second of Torts § 46, Comment j (1965), and concluded that the award of damages had to be overturned, since the conduct of the plaintiff was not of the "required severity." The Court stated, "Liability, however, only results when these reactions are so severe that no reasonable person could be expected to endure it." 106 Idaho at 741, 682 P.2d at 1288.

We now turn to the facts of the instant case, viewed in the light most favorable to the respondent. The Fritzes sold to Brown a residential property and Fritz fraudulently misrepresented certain features of the property, causing pecuniary damage to Brown. The Fritzes had previously sold a portion of that same property to Manning, and, although the Fritzes asserted at trial that such duplication of sale was inadvertent, the jury was free to believe, and we must assume, that such duplication of sale was done knowingly and deliberately. When Brown learned the true condition of the property and of the claim of Manning to a portion of it, she suffered severe emotional distress which manifested itself in physical symptoms, including the need for substantial hospitalization. Although it was argued at trial that Brown's physical distress resulted from previous longstanding physical ailments, the jury was free to hold against the defendants on that theory, and we must assume that it did so.

The facts of the instant case thus present somewhat unique circumstances as contrasted with previous cases. Here, there are physical manifestations of the emotional distress. However, those physical manifestations are not contemporaneous with the acts of the defendant, but occur later as a result of emotional distress admittedly caused by defendants' acts.

Regardless of how the relationship between Brown and defendant Fritzes is viewed, it is clear that any damage, pecuniary or emotional, which fell upon Brown resulted from the negotiations for and the consummation of a contract to convey real property. The damage did not result from an "independent" tort involving a physical or a constructive contact between two parties who were not in a contractual relationship. It did not involve the harassment of another or the libeling or slandering of another. The actions of Manning in asserting to Brown his ownership of a part of the property must be disregarded, since Brown acquiesced in the dismissal of any action she may have had against Manning, except insofar as it related to the quieting of title to the property.

The distinction is far from clear, in the Idaho law, between an action based upon

breach of contract and an action for tortious breach of contract. Suffice it to say at this point that our allowance of an action such as the instant case, for damages for negligent infliction of emotional distress resulting from a breach of a contract, can do little except muddy the already murky waters.

We note the close parallel between allowable damages for breach of contract under the terminology of "emotional distress" and for punitive damages. In *Cheney v. Palo Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), the Court extensively reviewed the previous Idaho law relating to punitive damages. We stated:

> "[W]e note that [punitive damages] are not favored in the law and therefore should be awarded only in the most unusual and compelling circumstances. They are to be awarded cautiously and within narrow limits.... An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.' [Citations.] The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence.'" 104 Idaho at 904–905, 665 P.2d at 668–669.

The asserted justification for damage awards for "emotional distress," being the need to punish or to deter wrongful conduct, has been found in notions that a defendant's conduct should not be tolerated, or that it so far deviated from a social norm that the defendant could have expected to be subjected to more than usual compensatory damages.

The decision of the Court in *Cheney* has been viewed as a substantial expansion of the parameters of conduct for which punitive damages may be awarded. *See* Bakes, J. dissenting in *Cheney*, 104 Idaho at 931, 665 P.2d at 695.

■ We hold that there is no significant, if in fact any, difference between conduct by a defendant which may be seen to justify an award of punitive damages, and conduct which may justify an award of damages for emotional distress. Justification for an award of damages for emotional distress seems to lie not in whether emotional distress was actually suffered by a plaintiff, but rather in the quantum of outrageousness of the defendant's conduct. Although a plaintiff may in fact have suffered extreme emotional distress, accompanied by physical manifestation thereof, no damages are awarded in the absence of extreme and outrageous conduct by a defendant. As has been said in Comment (d) to the Restatement (Second) of Torts § 46 (1965):

> " 'The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.' "

And, as Judge Magruder has stated:

> "Against a large part of the frictions and irritations and clashings of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv.L.Rev. 1033, 1035 (1936).

We also suggest that the enormous differences that exist between individuals as to their ability to withstand mental stress, frustration, embarrassment or humiliation make next to impossible the application of a reasonableness standard as to plaintiffs whom defendants must expect to encounter

in contractual dealings. While we have stated that in tort cases a defendant must take a plaintiff as he is found, including excessive fragility and the like, we know of no such standard applicable to the psychological state of a plaintiff which a defendant might encounter.

■ Based upon all of the above, we hold that in Idaho, when damages are sought for breach of a contractual relationship, there can be no recovery for emotional distress suffered by a plaintiff. If the conduct of a defendant has been sufficiently outrageous, we view the proper remedy to be in the realm of punitive damages.

We emphasize that our ruling today speaks only to damages asserted for emotional distress which arise from or have their roots in the breach of a contractual relationship. We do not speak to the question of purely tortious conduct arising outside of and apart from a contractual relationship. We leave to another day the carving out of conduct which, while arising in contract, might be *conclusively* presumed to inflict emotional distress, *e.g.,* mutilation of dead body, *Hill v. Travelers' Ins. Co.,* 154 Tenn. 295, 294 S.W. 1097 (1927), or removal of a body from its casket, *Boyle v. Chandler,* 138 A. 273 (Del.Super.1927). *See Hatfield, supra,* 100 Idaho 840 at 850, 606 P.2d 944 at 954, and cases cited therein.

■ In the instant case, the trial judge somewhat inexplicably held that the conduct of the defendant Fritz was not so outrageous as to allow plaintiff's case on punitive damages to go to the jury and yet at the same time apparently believed that the defendant's conduct was outrageous enough to permit the plaintiff's claim for damages for emotional distress to be presented to the jury. Absent that circum-

stance, we would simply reverse the award of damages for emotional distress. However, since the trial judge did not at that time have the benefit, if any, of this opinion, and in justice to the parties, we reverse the award of damages for emotional distress and remand the cause for a new trial solely on the issue of punitive damages.

The foregoing disposition of the cause makes unnecessary our consideration of the cross-appeal by plaintiff-respondent, cross-appellant.

No costs or attorney's fees on appeal.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

Just as he did in *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661 (1983), Justice Shepard again takes the Court in the right direction. The rule announced today brings to mind *Linscott v. Rainier National Life Ins. Co.,* 100 Idaho 854, 606 P.2d 958 (1980), where one of Idaho's outstanding trial judges, in an action brought against an insurance company, while declining to recognize a claim for inflicted emotional distress and anguish, held guilty of totally unjustified bad faith refusal of medical insurance claims and awarded $20,000 in punitive damages in addition to I.C. § 41–1839 statutory attorney's fees of $1,800. My review of the record in *Linscott* fully convinces me that any court other than the one which heard the appeal would have affirmed the district court out of hand.[1] The rule announced today fits well with Judge Cogswell's decision in *Linscott.* Some policy holders placed in the same position as the Linscotts might have reacted only in anger or frustration, but others might have suffered even more severe emotional distress at be-

1. Justice McFadden, the author of *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972), and proponent of its rule of three categories of "proper" cases for awarding punitive damages, and four district judges bear the responsibility for the *Linscott* decision. One would like to think that had five district judges sat on the appeal Judge Cogswell's judgment would have stood intact.

ing so treated.[2] In this case, the evidence is overwhelming that Mrs. Brown was indeed afflicted. But the question arises as to whether one person's propensity to become so afflicted in stress situations should give rise to damages that others would not sustain. The punitive damages award in *Linscott*, while to my mind a very modest amount, was in part a proper substitute for those damages caused by emotional distress inflicted by Rainier. Hence, the trial bar may see our opinion today as perhaps both taking away and giving. To me it seems workable and should be tried. Applying what would amount to the rule of today's case, Judge Cogswell, in denying damages for emotional distress caused by Rainier's outrageous conduct, did not let such conduct go unrewarded, but undoubtedly had it well in mind when he assessed punitive damages.

The *Linscott* Court, however, interfered. When the smoke cleared away all that remained of $20,000 punitive damages and $1,800 of attorney's fees was the $1,800 which the Linscotts were entitled to with or without punitive damages—which magnificent amount would have as much deterrent effect on such a defendant as would a single flea on an elephant hide. While the

appeal languished in the Supreme Court, Rainier became bankrupt and the Linscotts received nothing.

The one bright line in *Linscott* is buried in footnote 6, "of course, it might be shown that in denying the claim the company committed some independently tortious act, which would give rise in itself to an award of punitive damages...."[3] Judge Cogswell, in his *Linscott* decision stated:

It is the finding of this Court that defendant acted in a conscious and willful disregard of plaintiffs' rights and that their action was gross and outrageous justifying the Court in awarding punitive damages.

The evidence is without conflict that:

1. The defendant sold the policies of insurance to Laurelie Linscott for a valuable consideration.

2. Laurelie Linscott made no misrepresentations in the policy application concerning her health.

3. The policy was represented to the plaintiffs and to Laurelie by the defendant's agent as a policy covering all preexisting conditions six months after issuance.

4. After the claims were filed by the plaintiffs, the defendant refused pay-

---

2. Judge Cogswell stated his views on the law and pertinent facts:

Plaintiffs were present with Laurelie Linscott when the policies were purchased from the defendant through Donald Squires. Norman Linscott helped Laurelie Linscott prepare the medical insurance claims for his daughter and helped to forward them to the defendant. His testimony is uncontradicted that the conduct of the defendant in denying the claims under the policy was extremely upsetting to the plaintiffs.

The evidence is also uncontroverted that the plaintiffs, as beneficiaries under the policy, have not incurred any personal injury nor have they suffered damages for loss of a property right.

It is important to note that the plaintiffs' claim for mental suffering is based upon the ground of failure of the defendant to pay the policy claim and is not based upon the independent tort of outrageous conduct intentionally causing severe emotional distress.

Idaho is committed to the doctrine that there is no common-law right of recovery for

purely emotional trauma. Other jurisdictions have allowed recovery for emotional trauma where there were physical manifestations of the injury (*See Summers vs. Western Idaho Potato Processing Company, 94 Ida 1.*)

R., p. 47.

3. This was exactly what was shown to the *Hatfield v. Max Rouse & Sons*, 100 Idaho 840, 606 P.2d 944 (1980), district court and jury—the verdicts and judgment of which received the same treatment at the hands of the same court. After Max Rouse sold Hatfield's tractor for half of the reserve price, it held the proceeds as ransom until Hatfield would agree to forego his claim for damages. When that failed and suit was filed by David Hatfield, Max Rouse, although a fiduciary, continued to withhold the $12,000 from Hatfield, and only paid it after verdict and judgment. The *Linscott-Hatfield* Court excused such conduct completely by eradicating the jury's award of punitive damages—which the trial court had held was just and proper.

ment alleging misrepresentation by Laurelie Linscott. The refusal continued even in face of all of the medical advice in this case that Laurelie Linscott was not suffering from epilepsy per se, and that she had accurately reflected her health condition in the insurance application.

5. There is a complete lack of evidence in the case that would in any manner justify the defendant's position of non-payment of these claims.

6. The only conclusion that the Court can make in view of the complete void in the evidence supporting defendant's position is that the defendant's conduct was a conscious, willful and deliberate disregard of the plaintiffs' rights under the insurance contract and was oppressive and grossly outrageous.

R., pp. 44–45.

As any reader of *Linscott* will observe, the appellate court assessment of Rainier's conduct was that, although outrageous, it merited no punitive damages. Under *Cheney* and today's opinion the miscarriage of justice in *Linscott* will not again occur.

Justice Bakes in dissent sees the Court as deciding an issue not before it. In particular he is perplexed that in doing substantial justice the Court is giving Mrs. Brown another shot at punitive damages. This is said to be wrong where she did not appeal from the trial court's refusal to let her case go to the jury on that issue. Justice Bakes may be right, and the Court may stand guilty as charged. But it is not a novel proposition. In *State v. Lopez*, 98 Idaho 581, 570 P.2d 259 (1976), Justice Bakes in his 1976 opinion held "that the complaint in the case was defective because it did not charge and describe an offense, and that prosecution under the complaint was a violation of Lopez' due process rights under art. I, § 13 of the Idaho Constitution." *Id.*, at 582, 570 P.2d 259. Of this Justice Shepard wrote his disagree-

ment therewith: "Specifically, I disagree with its reliance upon the defectiveness of the complaint. This issue was neither considered by the trial court nor directly addressed in the briefs on argument provided on appeal." *Id.*, at 585, 570 P.2d 259. Nonetheless, on rehearing Justice Bakes continued to vote to overturn the conviction on those grounds first stated, this time without the concurrence of Justice Donaldson. *Id.*, at 590, 570 P.2d 259.

Justice Bakes was equally vocal in opposition to the Court's restoration of punitive damages in *Cheney v. Palos Verdes Inv. Corp., supra,* in dissent he complained that the Court "gratuitously, and by *obiter dictum,* throws out the rules relating to punitive damages which were established in *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1982) ...", explaining, "I say gratuitously because the rule announced by the Court today ... was not raised by either party in their issues on appeal...." *Id.*, 104 Idaho at 931, 665 P.2d 661. In his assertion, Justice Bakes was eminently correct, but a large oversight was that when Justice McFadden authored *Cox v. Stolworthy,* Justice Bakes was also authoring *Jolley v. Puregro,* 94 Idaho 702, 496 P.2d 939 (1972). The opinions in the two cases were released within seven days of each other. In neither of those cases had the parties raised the issue of, or requested, the restriction on punitive damages with which the Court came down—to the detriment of the science of civil jurisprudence for a full decade. See also *Cheney v. Palos Verdes, supra,* 104 Idaho at 907, 665 P.2d 661, Bistline, J., special concurring.

BAKES, Justice, concurring in part and dissenting.

The central question presented by this appeal is whether the trial court erred by instructing the jury on the issue of negligent infliction of emotional distress. Insofar as the majority holds that this instruction was error since a cause of action for

negligent infliction of emotional distress is not recognized in Idaho, I concur. Regarding the question of whether damages for emotional distress may be awarded in an action for breach of contract, Idaho has adopted the Restatement of Contracts view. *See Hatfield v. Max Rouse & Sons Northwest,* 100 Idaho 840, 847, 606 P.2d 944, 951 (1980). Specifically,

> "In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for losses other than mere pecuniary loss." Restatement of Contracts § 341 (1932).

Under what circumstances Idaho courts recognize intentional infliction of emotional distress, a more difficult question, is an issue which need not be addressed here, since the issue has not been raised in this appeal.

However, I cannot agree with the majority's conclusion that the trial judge's decision to instruct the jury on negligent infliction of emotional distress indicates that the trial judge believed the defendant's conduct to be outrageous. The record reflects otherwise. During the conference on the proposed negligent infliction of emotional distress instruction, the judge stated:

> "[I]t appears to me that there is sufficient evidence at least for a jury question at this point to submit the matter to the jury, and I am not unmindful of the fact that the court has the power through judgment notwithstanding the verdict and so forth to correct errors if any should be committed. I don't mean by that I am expressing an opinion it should or shouldn't be granted, but I realize it's

a tough field of the law, but we do have all this evidence in and I think the jury might be able to conclude that there is some area where they could grant it.

> . . . .

> "It seems to me it's a real close question but we had some evidence in there about sewer gas and some of those things that may possibly have created this situation. I'm going to go ahead and instruct on it."

The trial judge's comments indicate that he had serious reservations about whether there was even sufficient evidence of *negligence* to instruct on negligent infliction of emotional distress. Accordingly, I cannot agree with the majority's conclusion that the defendant's behavior was necessarily outrageous enough to justify remand on the issue of punitive damages—particularly since this conclusion is counter to the trial judge's stated view:

> "I do not believe that the evidence in this case is sufficient for the jury to believe that the Fritzes acted with an extremely harmful state of mind, and I believe to grant punitive damages in this case would ignore the Supreme Court's mandate that punitive damages are to be awarded rarely and would ignore the mandate that they are not favored in the law."

Finally, I am perplexed, as I am sure the parties will be, that the majority has chosen to address the punitive damages issue at all. It was not asserted to be an issue on appeal by either party and was neither briefed nor raised at oral argument, and is thus not before this Court. Our rule against deciding issues on appeal not raised by the parties was described by Justice Bistline in *State v. Nield,* 106 Idaho 665, 669, 682 P.2d 618 (1984), as:

> "A principle so well-established as to be unneedful of citation is that an appellate court, including (one would like to think)

a state's supreme court, will not consider issues in the abstract, and certainly not issues which are attempted to be raised for the very first time." 106 Idaho at 669, 682 P.2d at 622.

In civil actions [1] the Court has regularly held that, both under earlier statutes and more recently under the rules of appellate procedure, a party who does not raise an issue before the trial court, or who on appeal does not assert an issue as error on appeal, has waived that issue, and the issue will not be considered by this Court.[2] *Cox*

*v. Stolworthy*, 102 Idaho 714, 639 P.2d 12 (1981); *Mollendorf v. Derry*, 95 Idaho 1, 501 P.2d 199 (1972); *Baldwin v. Ewing*, 69 Idaho 176, 204 P.2d 430 (1949).

---

1. While the same rule generally applies in criminal proceedings, under certain limited situations in criminal proceedings an issue not raised before the trial court, nor raised as an issue on appeal, will be considered. Thus, in *State v. Lopez*, 98 Idaho 581, 570 P.2d 259 (1977), the Court, in interpreting the then Idaho Criminal Rule 12 which required all defenses and objections which can be determined without a trial to be raised prior to trial, except those defenses which assert that the indictment or information "fails to show jurisdiction of the court or to charge an offense. which objection shall be noticed by the court ... [at] any time during the pendency of the proceedings," held that "the defense. of failure to charge an offense may also be raised at any stage of the proceedings, whether the proceedings are before the trial court or before an appellate court, and may be raised either by the parties or the Court upon its own initiative." *State v. Lopez*, 98 Idaho at 585, 570 P.2d at 262. Again in *State v. Mowrey*, 91 Idaho 693, 429 P.2d 425 (1967), Justice Spear, speaking for a unanimous Court and quoting from the case of *Hopkins v. Barnhardt*, 223 N.C. 617, 27 S.E.2d 644 (1943), stated:

   "When there is a defect of jurisdiction, or the complaint fails to state a cause of action, that is a defect upon the face of the record proper, take notice, and when such defects appear the take notice and when such defects appear the Court will *ex mero motu* dismiss the action." 91 Idaho at 695, 429 P.2d at 427.

   In *State v. Lopez*, *supra*, the plurality opinion, following this Court's opinion in *State v. McMahan*, 57 Idaho 240, 65 P.2d 156 (1937), held that failure to set out the victim of the crime in the information denied the defendant of due process because of the failure to allege the "particulars of time, place, person and property as to enable the defendant to understand distinctly the character of the offense complained of...." *Lopez*, 98 Idaho at 584, 570 P.2d at 262.

2. Justice Bistline, in his special concurring opinion, returns to a recurring theme that *Cox v.*

*Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972), and *Jolley v. Puregro*, 94 Idaho 702, 496 P.2d 939 (1972), were "companion cases" in which the Court voluntarily, and without the issue being raised by the parties, established new punitive damages standards. *See Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983) (Bistline, J., specially concurring). Justice Bistline writes, "[W]hen Justice McFadden authored *Cox v. Stolworthy*, Justice Bakes was also authoring *Jolley v. Puregro*,.... The opinions in the two cases were released within seven days of each other." *Ante* at 1379.

However, *Cox v. Stolworthy* and *Jolley v. Puregro* were not companion cases, nor were they cases which were jointly considered. *Cox v. Stolworthy* was argued and submitted for decision on September 10, 1971. At that time the members of this Court included Chief Justice McQuade, Justices McFadden, Donaldson, Shepard and Spear. (Justice Spear did not sit on the *Cox* case, District Judge John Maynard sitting in his place. Shortly thereafter, Justice Spear retired and was later succeeded on the Court by Justice Bakes, who was appointed on December 30, 1971, nearly four months after *Cox* was argued and submitted.)

*Jolley v. Puregro*, *supra*, on the other hand, was argued on January 4, 1972, four months after the *Cox v. Stolworthy* case was argued and taken under consideration by the Court on September 10, 1971. The *Jolley v. Puregro* Court, which consisted of two different judges than the *Cox* panel, did not independently re-evaluate the standards set down in *Cox v. Stolworthy*, but merely applied the *Cox* standards to the facts of the *Jolley* case based upon appellant Puregro's allegation that no punitive damages should have been awarded under the circumstances of that case. The *Jolley v. Puregro* Court upheld the trial court's award of punitive damages, based upon the law which this Court had previously enunciated in *Cox v. Stolworthy*.