760 P.2d 1

**UNIVERSITY OF UTAH HOSPITAL, Marshall Henderson and Theressa Henderson, Plaintiffs-respondents,**

v.

**CLERK OF MINIDOKA COUNTY; Board of County Commissioners of Minidoka County; and Minidoka County, Defendants-appellants.**

No. 16151.

Supreme Court of Idaho.

April 27, 1988.

Rehearing Denied June 30, 1988.

Charles H. Creason, Jr., Minidoka County Pros. Atty., Rupert, for defendants-appellants.

Dean Williams, Blackfoot, for plaintiffs-respondents.

BAKES, Justice.

This is another case in the long and continuing stream of litigation that flows from Idaho's medical indigency statutes. Appellant Minidoka county appeals from a district court decision which reversed the Minidoka County Commissioners' denial of medical indigency assistance as claimed by the University of Utah Hospital (hospital) on behalf of an Idaho family. We reverse and remand to the Board of County Commissioners of Minidoka County.

The Hendersons were residents of Minidoka County and on July 9, 1981, Theressa Henderson gave birth to a premature infant at Magic Valley Regional Medical Center in Twin Falls. Subsequent complications resulted in the baby being transferred to the University of Utah Hospital on July 11, 1981, where it remained until August 24, 1981. Both Mr. and Mrs. Henderson were employed, although Mrs. Henderson was on maternity leave from her employment with Ore–Ida Foods. Mrs. Henderson's employee medical insurance paid $37,563.10 of the $43,824.30 hospital bill, leaving a balance of $6,261.20.

The hospital attempted to collect the balance from the Hendersons. The Hendersons offered to pay $100.00 per month on that balance, but the hospital rejected that offer, suggesting that the Hendersons borrow the money and pay off the balance of the hospital bill. However, the Hendersons were unable to borrow the money to pay off the hospital. In fact,

only one payment of $10.00 was ever made to the hospital.

The hospital filed an action against the Hendersons to collect the bill and on August 12, 1982, obtained a judgment for the balance owed. On September 23, 1982, the Hendersons filed a voluntary petition for bankruptcy. A little over two months later, on November 24, 1982, the hospital filed an application for medical indigency assistance on behalf of the Hendersons with Minidoka County. The county denied the application on January 11, 1983, and the hospital requested a hearing before the Minidoka County Commissioners. The hearing was held on March 12, 1984. At the hearing the county commissioners found that the Hendersons were "medically indigent"[1] as early as January, 1982, and that the hospital had failed to meet the "time for filing" requirements set forth in I.C. § 31–3504.

The hospital appealed to the district court. After reviewing the record made before the county commission, the district court concluded that there was no substantial evidence to support the commission's finding that the Hendersons had become medically indigent as early as January, 1982. The district court concluded that there was no evidence that the Hendersons were medically indigent until the date upon which they filed bankruptcy, September 23, 1982. The district court further held that while the application filed by the hospital on November 24, 1982, did not° meet the 30–day deadline of I.C. § 31–3504, the county was not prejudiced by the hospital's failure to file the application within the 30–day time limit and that under our decision in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), the

commission erred in denying the application. Accordingly, the district court entered judgment for the hospital in the principal sum of $6,261.20 and prejudgment interest in the amount of $2,754.93.

Minidoka County appeals from the district court's judgment asserting (1) that the district court erred in concluding that there was no substantial competent evidence to sustain the commission's finding that the Hendersons had become medically indigent as early as January, 1982; and (2) that the district court's application of I.C. § 31–3504, which avoided the statutory time limits set in the statute, was incorrect as a matter of law.

As a preliminary matter we point out that Minidoka County's assertion that there was substantial competent evidence to support the commission finding that the Hendersons became medically indigent as early as January, 1982, is not necessarily determinative of the final outcome of this case. The record clearly demonstrates that no matter what date the parties point to as the date the Hendersons truly became indigent, the hospital ultimately failed to file an application within either the 30– or 45–day period provided in I.C. § 31–3504.[2] The final determination of this case rests upon the interpretation of the last sentence of I.C. § 31–3504:

> "**31–3504. Time for filing applications —Notice to counties.**—An application for or on behalf of a medically indigent person receiving emergency medical services may be made any time within forty-five (45) days following the admission of said person to the hospital furnishing said care. If a person becomes medically indigent subsequent to admission to a hospital or subsequent to receiving treat-

1. I.C. § 31–3502(1) defines medical indigency as follows:

> " 'Medically indigent' means any person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services."

2. Although the county argues that the Hendersons were indigent as of February, 1982,

there was conflicting evidence in the record. Assuming that we had reviewed the county's factual findings and found that they were supported by the record the hospital would have been eleven months late in filing. If the date the Hendersons filed their petition for bankruptcy is used to determine the date they became indigent, then the hospital filed 62 days after the fact and once again failed to meet statutory deadlines.

ment by a hospital, an application for the person, or on his behalf, shall be made within thirty (30) days of the time the person becomes medically indigent. *The chargeable county or counties shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent.*" (Emphasis added.)

■ The statute sets forth a limitation for the filing of claims "for or on behalf of a medically indigent person." However, the limitation is modified by the last sentence of the statute, which reads, "The chargeable county ... shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent." This Court has previously determined the meaning of the final sentence of the statute in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984). In that case we ruled that the county must demonstrate that it was prejudiced by the hospital's lack of a timely filing before the time limits embodied in I.C. § 31–3504 will be strictly adhered to. In *Carpenter* we pointed out that under I.C. § 31–3504 failure of an applicant to provide timely notice of claim for medical indigency benefits was not a sufficient reason to deny those benefits absent a showing that the county was prejudiced by the lack of notice. "[N]othing in the statutes provides that the claim may be denied if such notice has not been provided by a hospital.... [F]ailure to provide the notice contemplated by I.C. § 31–3504, does not necessarily defeat a claim for benefits." *Carpenter v. Twin Falls County*, 107 Idaho at 582–583, 691 P.2d at 1197–98. The Court further elaborated on that interpretation, stating:

3. *Carpenter* applied the same rationale to both statutes (I.C. §§ 31–3404 and 31–3504). "Applying the rationale set forth in Part I, *supra*, we hold that the failure to provide the notice contemplated by I.C. § 31–3504, does not necessarily defeat a claim for benefits." *Carpenter v. Twin Falls County, supra* at 583, 691 P.2d at 1198.

4. The district court's *de novo* review of the factual record correctly attempted to balance the competing interests when it held that:

"It is the duty of courts in construing statutes to ascertain the legislative intent and to give effect thereto. *Summers v. Dooley*, 94 Idaho 87, 481 P.2d 318 (1971). The legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents. I.C. § 31–3501 ('DECLARATION OF POLICY.—In order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided.'); *Braun v. Ada County*, 102 Idaho 901, 903–04, 643 P.2d 1071, 1073–74 (1982).

"Given the two-fold purpose of the statutes here in question, it would be clearly inappropriate to hold that a claim against the responsible county for medical indigency benefits can be denied simply because the application submitted does not comply with the technical requirements of I.C. § 31–3404 [and 31–3504]." [3] *Id.* at 582, 691 P.2d at 1197.

Thus, based on *Carpenter*, the Minidoka County commissioners were not entitled to reject the hospital's claim because it was not timely filed without first making a factual determination that the county was prejudiced by the hospital's late filing. *Carpenter* contemplates a balancing of interests—prejudice to the county balanced against the reasonableness of the hospital's late filing.[4]

"In this case there were ongoing efforts between the Hendersons and the hospital to settle the bill without county assistance. The Hendersons had offered to pay $100 per month on the bill, but the hospital declined that offer reasoning that that rate of payment would not allow for a reasonable rate of interest on the total bill of $6,261.20. The hospital suggested a bank for obtaining a loan. Eventually the Hendersons filed a petition in bankruptcy as an alternative to borrowing the money. In the opinion of the court these facts show a gradual development

The district court acknowledged that the county was entitled to a hearing on the issue of prejudice resulting from the late filing and stated, "If counsel for the county does not give notice that it wishes to present evidence of prejudice through untimeliness, within fourteen days of trial, counsel should submit their formulations for determining the actual amount of the judgment." The district court thereby recognized that if the county wanted to raise the issue of prejudice, they were entitled to submit evidence on that issue. In response to the district court's order, the county did submit an affidavit of the county clerk, setting out its claim that it was prejudiced in several different respects as a result of the failure to timely file by the hospital. The issue of prejudice having been raised, the matter should have been remanded by the district court to the county commission as required by I.C. § 67–5215(e) for hearing and findings on the issue of prejudice to the county. However, the district court, rather than remanding the case to the county commission, made its own factual determination that the hospital's late filing did not prejudice the county.[5] However, such finding must be made in the first instance by the administrative agency. I.C. § 67–5215. Under Idaho's Administrative Procedures Act, I.C. § 67–5201 *et seq.*, which is made applicable to indigent medical claims by I.C. § 31–3505, when an appeal is brought to a district court and the findings of fact to be reviewed are missing or inadequate the district court should remand the case to the county commission. *See Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 655 P.2d 926 (1982) (stating that failure to hold otherwise would be to authorize the district court to substitute its judgment for that of

the agency despite the express provision prohibiting such action in subsection (g) of I.C. § 67–5215).

In its Appellant's Brief on appeal, pages 19–21, the county cites to several exhibits in the record, together with the unrebutted affidavit filed by the county clerk, and asserts that "these circumstances clearly show how Minidoka county was prejudiced by the dilatory notice provided by the hospital on Henderson's claim." Appellant's Brief, p. 21. From those exhibits the county asks us to conclude that "prejudice to the county from those delays is demonstrated by the record." Appellant's Brief, p. 19. However, the resolution of factual issues regarding prejudice to the county cannot be made by this Court on appeal nor by the district court on appeal. *Workman Family Partnership v. City of Twin Falls, supra.* The Administrative Procedures Act, I.C. § 67–5215(e), (f) and (g), require those findings to be made by the administrative agency. The district court erred when it resolved the issue of prejudice against the county and entered judgment in favor of the hospital.

The judgment of the district court is reversed and the cause remanded to the Minidoka County Commission to make findings on the issue of any prejudice to the county from the late filing, and to enter a final order either allowing or disallowing the hospital's claim.

HUNTLEY, J., and McQUADE, J. Pro Tem., concur.

SHEPARD, C.J., dissents without opinion.

BISTLINE, Justice, specially concurring.

Only because I am not at all persuaded by the final paragraph of the opinion au-

---

of the status of medical indigency which became crystallized by the petition in bankruptcy.

"The law should encourage hospitals to explore with patients alternatives to satisfying medical bills before rushing in with applications for county assistance. This appears to have been the position taken in this case by the hospital."

**5.** The district court did not expressly make a factual finding of lack of prejudice. Rather, the

district court, after considering the entire record, including the affidavit of the county clerk asserting prejudice, rendered judgment in favor of the hospital against the county. By entering judgment against the county the court implicitly found against the county on its claim of prejudice. The respondent hospital so asserts in its Respondent's Brief, where it states, "The court specifically found that the county had not been prejudiced by any delay." Respondent's Brief, p. 20.

thored by Justice Bakes does it become necessary to write. In all other respects I agree with his opinion. For reasons appearing, *infra*, we very easily, and better, could have left our 1987 opinion in place.

## I.

For certain I do not in the least agree that our first opinion of April 23, 1987, should be withdrawn. On a number of sessions I have pointed out that the practice of withdrawing opinions is not salutary in effect. To withdraw an opinion necessarily carries with it the connotation that something unpleasant is being buried out of sight—which is probably true, if it be in this business considered a lack of virtue to come to a different conclusion on the opportunity of a second consideration. For my part, I see as a display of virtue that a person of reason can be persuaded to a change of view in matters of law.[1] Moreover, there is much to be said for the proposition that the trial bench and bar are obliged not only to follow this Court's opinions, but to make out of them what the Court has done or attempted to do. In my view it would be extremely important to observe the metamorphosis of the court's final majority opinion, i.e., what was written in the first rounds of opinions, whether majority, specially concurring, and dissenting. Out of all that, plus what has been urged on rehearing, the final majority opinion is the culmination.

In order to serve the laudable purposes discussed above, I append to this opinion Justice Bakes' first opinion because in one instance it varies considerably with his current version.

That final paragraph deals with the application of the Administrative Procedures Act, I.C. § 67-5201, *et seq. Workman Family Partnership v. City of Twin Falls*, 109 Idaho 32, 655 P.2d 926 (1982), does not have application to this case, other than that both were appeals taken to a district court. There the appeal was from a final decision of a city council in a zoning mat-

ter. Here the appeal was taken from a decision of a Board of County Commissioners denying the University of Utah Hospital any recovery. In *Workman* the city council had failed to document anything that would qualify as findings. In this case that is not true. The Board entered its findings and conclusions not just once, but on two occasions.

In this case the district court was well aware that it sat in judicial review as evidenced by its conclusion to that effect, R. p. 39, 40:

1. This Court has subject matter jurisdiction to review the proceedings of the Minidoka County Board of County Commissioners pursuant to Idaho Code § 31-3505 and Idaho Code § 67-5215.

2. The plaintiffs have timely sought judicial review as required by Idaho Code § 67-5215(b).

Those conclusions were submitted by counsel for the Board. An ensuing conclusion, favorable to the Board (County) was this:

10. Unless Minidoka County can show that it was prejudiced by the lack of timely notice from the University of Utah Hospital of the Hendersons' indigency, such lack of notice does not serve as a ground for denying benefits pursuant to *Carpenter v. Twin Falls County*, Idaho Supreme Court Report, Volume 84, No. 137 (November 7, 1984).

R., p. 40.

But, the following and final conclusion was in turn favorable, and properly so, to the Hospital, in that it placed the burden of showing prejudice on the Board:

11. Unless Minidoka County can show that it was prejudiced by the plaintiff's failure to file an application within thirty (30) days of the Hendersons becoming indigent, failure to file such timely application is not a ground for denying benefits.

R., p. 40-41.

The district court signed the foregoing on December 17, 1984, five weeks after this

---

1. This may be observed by my change of view on rehearing in *Suchan v. Suchan*, 113 Idaho 102, 741 P.2d 1289 (1987), and more recently in

*Harvey v. F.B. Trucking*, 115 Idaho ——, 767 P.2d 254 (1987).

Court's opinion was released in *Carpenter*. Obviously the *Carpenter* case necessarily influenced the proceedings in this case. It is also to be noted that the district court pleadings in this case were in place in short order, the Hospital's on May 16, 1984, and the Board's shortly thereafter on June 5, 1984. By a pretrial order entered on December 5, 1984, the Admitted Facts, basically as recapitulated by Justice Bakes in his opinion were set out, eight in number, leaving as enumerated facts at issue, the date of the onset of medical indigency, the date of filing of the application for medical indigency assistance, and whether the lack of Henderson resources to pay the account was sufficiently alleged. At the same time the issue of law stated was whether the application was timely as required by I.C. § 31–3404 and § 31–3504.

Court thereafter convened on December 13, 1984, for a hearing on the unstipulated issues. This hearing consisted of introducing the transcript of the Board's transcribed testimony of two witnesses, Marshall Henderson and Teresa Henderson, parents of the premature infant who weighed one-half ounce less than two pounds at birth. As the transcript shows, counsel examined them at length as to their financial circumstances at times pertinent, and also as to their ultimate decision to seek relief in the United States Bankruptcy Court. Counsel then argued to the district court their respective views and the Court ruled from the bench, conditionally, in favor of the Hospital, but with an opportunity afforded the Board to demonstrate prejudice, as per the written conclusions which were entered shortly thereafter and set out, *supra*. The Court also made its own Memorandum Decision which predated the Findings of Conclusions, having been written on December 19, 1984. At that time the district court wrote:

> Therefore, the court further concludes that the application in this case, although filed some 34 days after the hospital learned of the filing of the petition in bankruptcy, was sufficient under *Carpenter, supra*, unless the defendant county can show prejudice by the delay.

Because this legal consideration has only been clearly developed, by *Carpenter*, last month, and that it was brought to the attention of counsel sua sponte by this court, the court has granted the county some additional time to determine whether there is any factual basis for asserting prejudice through untimeliness. R., p. 27.

The point bothering Justice Bakes also arose at the hearings in district court on December 13, 1984. Counsel for the Board specifically brought to the court's attention that the prejudice issue had not been litigated in proceedings before the commissioners.

MR. CREASON: I think I'd at least have to be given notice if that's now an issue before the Court in order to determine whether or not evidence can be presented on those issues. It was never litigated in the—before the Commissioners.

THE COURT: Nothing springs to mind as to why you shouldn't be given such an opportunity.

To my way of reading, the court specifically expressed its willingness that counsel for the board take that course of action; but notwithstanding the court's favorable reaction, the proposition was not further pursued. Instead, the discussion diverted in the direction of allowing the board to present to the district court such evidence of prejudice as it thought would be an influencing factor. It is probably in better order to submit the complete text of the colloquy between court and counsel which led to the showing of prejudice tendered to the district court.

MR. CREASON: Your Honor, just as a practical matter, I'm a little unclear as to the—it seems that the University of Utah seeks to have the requirements of timeliness waived, which was never waived by the pleadings, the State should have ample opportunities to present evidence on the issue of prejudice that was certainly not raised by the University of Utah's pleadings.

THE COURT: Though I think they claimed it was timely, as I recall, *so*

*you're saying that at this point this issue of whether or not the county was prejudiced by the lack of timeliness is something you wish to address further with more evidence?*

MR. CREASON: I think I'd at least have to be given notice if that's now an issue before the Court in order to determine whether or not evidence can be presented on those issues. *It was never litigated in the—before the Commissioners.*

THE COURT: *Nothing springs to mind as to why you shouldn't be given such an opportunity.*

MR. WILLIAMS: I don't know why they would want to be bringing new issues on appeal.

THE COURT: Well, I think it's a fact that nowhere—I don't recall anything in any of your pleadings which tended to seek to excuse the lack of timeliness, and I have to say that Mr. Creason has demonstrated for the record that there was some—I have again looked at this Idaho Supreme Court case determined that that is an issue which may be present and Mr. Creason says that he'd like to, I guess, consult with his clients and find out whether or not there was some prejudice by which he needs to fully present their interests. It can be said with fairness that you didn't raise the issue, either. The Court raised it, I suppose.

MR. WILLIAMS: I suppose we felt it was raised when we say that the application was timely filed. We did give you notice.

THE COURT: Well, that's sort of a vague way of raising that specific issue. I suppose if that one might encompass that therein, but if that's true, then I guess every factual matter connected with the application could also be put into that vague reference. I think Mr. Creason's suggestion is reasonable and if he hasn't been prepared to, you could comb the record or to supplement the record with evidence on that point, which this Court feels is material in light of that case, it does seem unfair, particularly since I think that case only came out last month.

MR. CREASON: September 7th.

MR. WILLIAMS: Yes, a couple of months ago.

MR. CREASON: Your Honor, one other matter I believe the Court needs to make specific findings as to which findings of facts and conclusions of law in this matter are supported by the report, because I think then we can get into a question obviously raised by the timeliness and the amount of prejudice that will also be determined by timeliness or could be conceivably. There's obviously a date addressed in the findings of fact and conclusions of law entered by the Commissioners.

THE COURT: Concerning which?

MR. CREASON: Concerning the date that the Hendersons become medically indigent, and I would like a ruling from the Court whether or not the Court believes in its reviews that those findings are supported by the record.

THE COURT: The Court believes that a reasonable date would be the date that the application for medical indigency was filed. And what did the County conclude?

MR. CREASON: Pardon, Your Honor?

THE COURT: What did the County conclude in its findings of fact concern?

MR. CREASON: That the Hendersons were indigent as of January of '82.

THE COURT: I feel that that's an erroneous legal conclusion. It's true that there is some discussion in the record; however, if a person has some ability to obtain loans to discharge their obligations, it becomes sufficiently vague as to when in fact they should be declared medically indigent for the purposes of a hospital filing its application, and I would say that as to whether they really became the—got in over their head is something so ephemeral. I think the point is when were they so clearly indigent that the hospital's clock starts to run, and I feel that it's when they got notice that the Hendersons in this case were seeking relief from Bankruptcy Court.

MR. CREASON: So it's the finding of the Court that they were not indigent until the hospital received notice, or until the Hendersons filed bankruptcy petition?

THE COURT: Until they filed bankruptcy petition, but that the hospital's timeliness in filing starts when the—

MR. CREASON: When the hospital received notice?

THE COURT: Yes.

MR. CREASON: But as far as the Court is concerned, you believe that there's ample evidence in the record that the Hendersons were, in fact, indigent the day that they filed the petition of bankruptcy?

THE COURT: Yes.

MR. CREASON: And there's no evidence or not of insufficient evidence to support that finding at any date prior to that time?

THE COURT: Yes.

MR. CREASON: Okay. As a procedural matter, Your Honor, I would like that rendered by the Court in some sort of partial judgment, or whatever, to be my thinking.

THE COURT: Certainly.

MR. CREASON: That we ought to be able to proceed on these issues independently.

THE COURT: Why don't you submit the same and let Mr. Williams review that.

MR. WILLIAMS: I would suggest that, then, that document be prepared which would, in effect, find that the hospital is entitled to the payment of the claim and until the county can, within a certain period of time frame, come up with some reason to show that the time the application was filed was prejudicial to the county and did not give them sufficient notice.

THE COURT: That sort of sounds like a contingency judgment. I think it would be sufficient to make the other findings and conclusions but give the county an additional period of time to give evidence, give notice of whether or not it wishes to provide further evidence

concerning the matter of prejudice. You both could work on that together. If you disagree with each other on the documents to be submitted, you can submit two different documents and I'll choose the ones that reflect my opinion. (Emphasis added.)

The Board's showing of prejudice amounted only to a presentation of the sworn observations of Mr. Duane Smith, filed on December 27, 1984, shortly after the hearing.

STATE OF IDAHO

ss.

County of Minidoka

Duane Smith, being first duly sworn on oath, deposes and says:

1. That I am the duly elected Clerk of the District Court, ex-Officio Recorder and Auditor for Minidoka County, Idaho.

2. That your affiant has statutory responsibility to investigate applications for indigent aid in Minidoka County, Idaho, pursuant to Idaho Code § 3103495.

3. Minidoka County first learned that Marshall and Teresa Henderson may be in need of indigent assistance upon the filing of the application on November 24, 1982.

4. The application informed the county clerk that the first meeting of creditors had already been held on November 17, 1982, concerning Hendersons' Bankruptcy Petition.

5. That shortly after the birth of their son, Monty, Marshall and Teresa Henderson moved to Dietrich, Idaho, where they resided at the time of filing their indigent application.

6. Said application did not provide the county clerk with a current address, phone number, or other information concerning how to contact the Hendersons, other than through the University of Utah attorney.

7. That, in fact, said application failed to disclose that Hendersons at that time resided in Lincoln County, even though said fact was known by the University of Utah Hospital, and its attorney, who had

obtained a judgment on August 12, 1982, in Lincoln County, Idaho.

8. That had Minidoka County been informed of the foregoing in a more timely manner, Minidoka County would have been better able to examine and determine the existence or non-existence of the Hendersons' status as indigents.

9. That Minidoka County has never received notice that it was named creditor of the Hendersons in bankruptcy.

10. That had Minidoka County been informed prior to the filing of a Petition in Bankruptcy of the Hendersons' indigency, complete payment of the outstanding hospital bill may not have been necessary under the circumstances for the relief of the Hendersons, pursuant to Idaho Code § 31–3406.

11. That Minidoka County, Idaho, operates on a fiscal year running from October 1 through September 30. That budgeting for the upcoming fiscal year is completed in June and July preceding said fiscal year. That had Minidoka County been informed of Hendersons' claim in a more timely manner, and had said claim been approved, Minidoka County could have more adequately budgeted for said claim.

Further your affiant sayth not.

/s/ Duane Smith

Subscribed and sworn to before me this 27th day of December, 1984.

/s/ Joann Buttars

(SEAL)

Contrary to the view taken by Justice Bakes, the trial court did *not make a factual finding* that the county was not prejudiced by the hospital's late filing of the application based on the Hendersons' medical indigency. There is no such finding in the record. Justice Bakes has simply declared reversible error based on something which did not happen. Nor on appeal to this Court does the county raise such as an issue. Four issues are stated, and that is not one of the four. Appellant's brief, page 3. As a rule, the Court will not review issues that neither party raised or argued in their briefs. *State v. Hoisington*, 104 Idaho 153, 657 P.2d 17 (1983).

True, the county brief does mention prejudice, but only goes so far as to argue that the evidence it presented *to the district court* demonstrated prejudice, predicated for the most part on the submitted affidavit of Duane Smith.

But, as pointed out, that argument is made in the County Board's brief filed in this Court. As to the actual validity of the Hospital's claim, the Duane Smith affidavit discloses not even a scintilla of prejudice. Paragraphs numbered 1, 2, 3, and 4 establish no prejudice, serving only to prove that Mr. Smith is the county auditor, that the County first learned of the application on November 24, 1982, by which it also learned of the Hendersons' bankruptcy filing one week earlier.

That of which Mr. Smith's affidavit makes no mention is the action taken by his predecessor in office, Mr. August C. Bethke. Mr. Bethke as clerk of the Board was under the provisions of I.C. § 31–3405 required to investigate himself or obtain an investigation of the grounds of the Hospital's claim. A recognized presumption of law is that an official performs his duty. Here the presumption is not necessary. On December 27, 1982, Mr. Bethke by letter of that date to the Board advised them:

> Upon receiving the application of the University of Utah Hospital on behalf of Marshall and Teresa Henderson for minor child Monty, for medical assistance, it is my opinion that the above is [sic, are] medically indigent.
>
> Plaintiffs and Defendants Joint Exhibit I, p. 22 (unnumbered).

Notwithstanding the foregoing, the Board entered its denial of county aid and notified counsel for the Hospital. The Board specifically did *not* disagree with Mr. Bethke's opinion that the Hendersons were medically indigent. On a printed form it checked "other" reasons, going on to explain that the application was not on a standard form provided by the Board, and two, that payment had been made by commercial insurance.

Turning again to the remaining paragraphs of the Duane Smith affidavit, it is enough to note that they complained of not

having the Hendersons' address after a move, but conceded that the Hendersons could have been contacted through counsel for the Hospital. The closest thing to a claim of prejudice was that had the County "been informed in a more timely manner, ... Minidoka County could have more adequately budgeted for said claim." R., p. 35. Nothing by way of explanation was stated as to what would have been more timely, or to explain how prejudice was created whether the $6,261.20 was paid in one given month rather than another. The simple fact of the matter is that the County evidenced no intention to pay that bill at any time, and until this very day has not done so. Nor was the Board able to make any showing of prejudice which would have justified the district court in remanding to the Board—relief which the Board, as pointed out twice, did not ask for when invited to do so by the Court.

Notwithstanding all of the foregoing, Justice Bakes has garnered enough votes to vacate the judgment entered by the district court with directions that the district court remand the case back to the Board "to make findings on the issue of any prejudice to the county from the late filing, ..." (Maj.Op., p. 665, 760 P.2d p. 4).

The predicate for that unwarranted action is said by Justice Bakes to be in that "... the district court, rather than remanding the case to the county commissioners, made its own factual determination that the hospital's late filing did not prejudice the court." (Maj.Op., p. 665, 760 P.2d p. 4). By footnote 5 on the same page he reluctantly now concludes that there is no such finding in the record.

Of singular importance, and wholly unnoticed by Justice Bakes—much to my dismay because of the unnecessary extra time involved—is that the district court did in fact enter an order which would have remanded to the Board. That order was drawn by counsel representing the Board—who also drew the district court's findings of fact and conclusions of law. In fact, it was upon the basis of those findings of fact and conclusions of law that the order of remand was made and entered: "The

matter shall be remanded to the Board of County Commissioners for further action consistent with the Findings of Fact and Conclusions of Law and this Order." It was dated July 10, 1984, the same date as the filing of the Findings dated December 17, 1984, then lodged but not filed until later.

The very next day, however, the Hospital and the County stipulated that the case need not be remanded and that the district court might enter judgment thereon. Pursuant thereto the district court entered the formal judgment on the 15th day of July 1985. The only further proceeding in district court was over the cost bill submitted by the Hospital, particularly prejudgment interest.

It hardly will do for Justice Bakes to argue so vehemently in behalf of the remand which he directs. The County stipulated away the remand which the district court did order.

Another strong argument against the stance now taken by Justice Bakes is that he didn't think a remand was necessary a year ago, and three of us joined his opinion, to wit, Donaldson, Bistline, and Huntley. If none of us thought it required a remand a year ago, query, what change in the law has taken place which now makes a remand of such paramount importance?

Just the other day a practicing attorney lamented that in recent years both Idaho appellate courts seem less and less inclined to decide a case when the opportunity presents itself, instead on some grounds or pretext remanding for further litigation, which more often than not was unnecessary, time-wasting, and expensive. That thought seems highly applicable today.

Where there is not a requisite assignment of error, it ill-behooves an appellate court to raise an issue, and then reverse a district court on the basis that it holds error on the self-raised issue. Generally speaking, that is more often a philosophy espoused by Justice Bakes who, more often than not, rather strictly requires counsel to clearly delineate the issues presented.

Frankly, on this point, I side with counsel for the Board. Where an attorney has

been tendered the option of attempting to prove prejudice for the first time either back in the lower tribunal or in district court proceedings, counsel would feel quite uncomfortable in having taken the latter route and thereafter assigning as error the determination flowing therefrom. It could be referred to as sand-bagging the district court, but as mentioned, counsel did not so conduct himself. Unable to furnish the district court with evidence which would justify a showing of *sufficient* prejudice, he continued that argument in this Court, but was not so bodacious as to raise as an assignment of error that the district court should have remanded to the county commissioners for the taking of evidence and the making of findings relative to prejudice, and certainly not after having eschewed a clear-cut opportunity to pursue that route. Surely it has to be conceded that jurisdiction became vested in the district court, and even though from a highly technical viewpoint it might be said that it was error to allow the Board to submit to the district court its evidence believed to show prejudice, it cannot honestly be said that the district court was wholly responsible for that procedure. *Had* the district court found sufficient prejudice to the County and ruled against the Hospital, the Hospital, too, was in no position to complain. One may not complain of errors consented to, acquiesced in, or invited. *State v. Owsley*, 105 Idaho 836, 673 P.2d 436 (1983), citing *Frank v. Frank*, 47 Idaho 217, 273 P. 943 (1929).

Buttressing this correct view of the "prejudice" issue, or more properly lack thereof, is our first opinion of April 23, 1987. That opinion contained no discussion whatever of any "prejudice" issue. Why? Simply because, as I have pointed out, the County on appeal to this Court did not raise such an issue. Only on this second go-around has Justice Bakes of his own initiative raised it as an issue thereby prolonging the litigation.

Our 1987 opinion barely mentioned prejudice, which was in connection with the *Carpenter* case and its holdings which controlled the district court's disposition, and ours as well. This is most simply demonstrated by pausing to read the appended 1987 opinion, and find therein:

> .... The district court based its determination upon our recent case of *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), and ruled that the county must demonstrate that it was prejudiced by the hospital's lack of a timely filing before the time limits embodied in I.C. § 31-3504 will be strictly adhered to.

This case should be put to sleep with an affirmance. Why Justice Bakes and those who join his opinion *in toto* have struggled so mightily to breathe new life into this litigation is beyond me. The parties and the district court are free to quietly agree that there is no reason to indulge further.

## II.

With Justice Bakes commanding a majority for his opinion which, as with mine, embraces the change in precedent in this area of the law occasioned by *Carpenter*, it should ordinarily fall to him to answer the challenging of the dissenting opinion authored by the Chief Justice. Justice Bakes declines to do so, so I accept that honor and will be brief.

Although the Chief Justice has no problem in finding *Caldwell Memorial Hospital v. Board of County Commissioners*, 107 Idaho 33, 684 P.2d 1010 (Ct.App.1984), in that very same volume he has not found the *Carpenter* opinion, notwithstanding that in *Carpenter* he wrote a short dissent which made no mention that it superceded anything to the contrary written in the *Caldwell Hospital* case.

In the three and one-half years which have passed since *Carpenter* was released, there appears to have been considerably less confusion with the medical indigency statutes than was formerly the case. In the twelve years of my endeavors here I feel safe in saying that everyone on the Court has on occasion written as to poorly drafted statutory framework of those laws. What *Carpenter* did, and which should have been done much earlier, was to dispel

some of the confusion in the area of what had been perceived to be time limitations.

APPENDIX

1986 Opinion No. 50
IN THE SUPREME COURT OF THE STATE OF IDAHO

No. 16151

April 23, 1987

BAKES, Justice.

This is another case in the long and continuing stream of litigation that flows from Idaho's medical indigency statutes. Appellant Minidoka County appeals from a district court decision which reversed the Minidoka County Commissioners' denial of medical indigency assistance as claimed by the University of Utah Hospital (hospital) on behalf of an Idaho family. We affirm.

The Hendersons were residents of Minidoka County and on July 9, 1981, Theressa Henderson gave birth to a premature infant at Magic Valley Regional Medical Center in Twin Falls. Subsequent complications resulted in the baby being transferred to the University of Utah Hospital on July 11, 1981, where it remained until August 24, 1981. Both Mr. and Mrs. Henderson were employed, although Mrs. Henderson was on maternity leave from her employment with Ore–Ida Foods. Mrs. Henderson's employee medical insurance paid 80% of the $43,824.30 hospital bill, leaving a balance of $6,261.20.

The hospital attempted to collect the balance from the Hendersons. The Hendersons offered to pay $100.00 per month on that balance, but the hospital rejected that offer, suggesting that the Hendersons borrow the money and pay off the balance of the hospital bill. However, the Hendersons were unable to borrow the money to pay off the hospital. In fact, only one payment of $10.00 was ever made to the hospital.

The hospital filed an action against the Hendersons and on August 12, 1982, received a judgment for the balance owed. On September 23, 1982, the Hendersons filed a voluntary petition for bankruptcy. A little over two months later, on November 24, 1982, the hospital filed an application for medical indigency assistance on behalf of the Hendersons with Minidoka County. The county denied the application on January 11, 1983, and the hospital requested a hearing before the Minidoka County Commissioners. The hearing was held on March 12, 1984. At the hearing the county commissioners found that the Hendersons were "medically indigent"[1] as early as January, 1982, and that the hospital had failed to meet the "time for filing" requirements set forth in I.C. § 31–3504.

The hospital appealed to the district court. After reviewing the record made before the county commission, the district court concluded that there was no substantial evidence to support the commission's finding that the Hendersons had become medically indigent as early as January, 1982. The district court concluded that there was no evidence that the Hendersons were medically indigent until the date upon which they filed bankruptcy, September 23, 1982. The district court further held that while the application filed by the hospital on November 24, 1982, did not meet the 30–day deadline of I.C. § 31–3504, the county was not prejudiced by the hospital's failure to file the application within the 30–day time limit and that under our decision in *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), the commission erred in denying the application. Accordingly, the district court entered judgment for the hospital in the principal sum of $6,261.20 and prejudgment interest in the amount of $2,754.93.

Minidoka County appeals from the district court's judgment asserting that the district court erred in concluding that there

---

1. I.C. § 31–3502(1) defines medical indigency as follows:

" 'Medically indigent' means any person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services."

was no substantial competent evidence to sustain the commission's finding that the Hendersons had become medically indigent as early as January, 1982. This assertion requires us to review the record made before the county commission. The evidence and facts submitted before the commission are not really in dispute. It is the ultimate conclusion drawn from those facts upon which the county commission and the district court disagree. The record reflects that prior to the birth of their premature child Mr. and Mrs. Henderson were both employed. Mrs. Henderson took maternity leave from her employer Ore–Ida Foods, which was the source of her health insurance, to have her child. Mrs. Henderson intended to return to work as soon as her newborn son's health improved. Mrs. Henderson's health insurance, which she acquired as part of her employment benefits, paid for 80% of the original $43,824.30 hospital bill, leaving only a balance of $6,261.20. As a result of the medical emergency and Mrs. Henderson's maternity leave, the Hendersons were having trouble paying their bills as they came due. However, the record also demonstrates that they were trying to pay the debt and felt that they eventually could pay the hospital.[2] The hospital, as required by statute,[3] was in the process of attempting to collect that balance from the Hendersons.

We agree with the district court's conclusion that there is no substantial competent evidence in the record to support the county's finding that the Hendersons were indigent as early as January of 1982, and that the hospital's claim should be rejected because the claim was not filed within 30 days of that date. It is only with the benefit of hindsight that the commission could have concluded that the hospital

should have known that the Hendersons were indigent or insolvent as early as January of 1982. Thus, the district court did not err in reversing that determination by the county.

The county argues that, even if there was no substantial evidence to support its finding that the Hendersons became indigent as early as January, 1982, the district court nevertheless erred in finding that the hospital's application, which was filed 62 days after September 23, 1982, the date when the Hendersons filed bankruptcy, was not barred by the provisions of I.C. § 31–3504. The district court based its determination upon our recent case of *Carpenter v. Twin Falls County*, 107 Idaho 575, 691 P.2d 1190 (1984), and ruled that the county must demonstrate that it was prejudiced by the hospital's lack of a timely filing before the time limits embodied in I.C. § 31–3504 will be strictly adhered to.

In *Carpenter* we held that under I.C. § 31–3504 failure of an applicant to provide timely notice of claim for medical indigency benefits was not a sufficient reason to deny those benefits absent a showing that the county was prejudiced by the lack of notice. As the Court noted in *Carpenter*, the statutory time limits of I.C. § 31–3504 are tempered by the language in the last sentence of the statute which reads, "The chargeable county ... shall be notified *as soon as practicable* upon the hospital's obtaining information that a patient is medically indigent." (Emphasis added.) The Court in *Carpenter* stated that "nothing in the statute provides that the claim may be denied if such notice has not been provided by a hospital.... [F]ailure to provide the notice contemplated by I.C. § 31–3504, does not necessarily defeat a claim for benefits." *Id.* at 582–583, 691

---

**2.** At the hearing before the county commissioners the prosecuting attorney, representing the county, asked Mrs. Henderson:

"Q. Let me ask you this Theressa, if it hadn't been for the bills that already existed in January of 1982, when you more or less got the complete billing ‑ [from the hospital], ... would you have been able to make your payments as they came along?
"A. Yeah, sure.
  ...."

"In fact we had good credit. We were doing great until this time."

**3.** Under I.C. § 31–3509 "[h]ospitals making claims for the hospitalization of medically indigent persons shall make all reasonable efforts to determine liability for the account so incurred from any *available insurance or other sources* available for payment of such expenses *prior to submitting the bill to the county for payment.*" (Emphasis added.)

P.2d at 1197–98. The district court correctly applied *Carpenter* to the facts of this case.

"It is the duty of courts in construing statutes to ascertain the legislative intent and to give effect thereto. *Summers v. Dooley*, 94 Idaho 87, 481 P.2d 318 (1971). The legislature's general intent in enacting the medical indigency assistance statutes was two-fold: to provide indigents with access to medical care and to allow hospitals to obtain compensation for services rendered to indigents. I.C. § 31–3501 ('DECLARATION OF POLICY.—In order to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and to provide for the payment thereof, the respective counties of this state shall have the duties and powers as hereinafter provided.'); *Braun v. Ada County*, 102 Idaho 901, 903–04, 643 P.2d 1071, 1073–74 (1982).

"Given the two-fold purpose of the statutes here in question, it would be clearly inappropriate to hold that a claim against the responsible county for medical indigency benefits can be denied simply because the application submitted does not comply with the technical requirements of I.C. § 31–3404 [and 31–3504].[4] The specific purpose of I.C. § 31–3404 [and 31–3504] is undoubtedly to provide the county commissioners *with sufficient accurate information upon which to base their decision regarding a claim* for medical indigency benefits." *Id.* at 582, 691 P.2d at 1197 (emphasis added).

In seeking to ensure that the legislative intent behind I.C. § 31–3504 was adhered to, the district court explained that:

"In this case there were ongoing efforts between the Hendersons and the hospital to settle the bill without county assistance. The Hendersons had offered to pay $100 per month on the bill, but the hospital declined that offer reasoning

that at that rate of payment would not allow for a reasonable rate of interest on the total bill of $6,261.20. The hospital suggested a bank for obtaining a loan. Eventually the Hendersons filed a petition in bankruptcy as an alternative to borrowing the money. In the opinion of the court these facts show a gradual development of the status of medical indigency which became crystallized by the petition in bankruptcy.

"The law should encourage hospitals to explore with patients alternatives to satisfying medical bills before rushing in with applications for county assistance. This appears to have been the position taken in this case by the hospital."

The judgment of the district court is affirmed. Costs to respondent. No attorney fees.

DONALDSON, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, dissenting.

For the following reasons, I cannot concur in the majority opinion.

The majority has refused to recognize the time limitations of I.C. § 31–3504. The Hospital's application for medical indigency benefits was filed with Minidoka County approximately 500 days after the Hospital admitted the infant Henderson, approximately 11 months after the time that the Hendersons were found by the commissioners to have been medically indigent, and 62 days after the Hendersons' bankruptcy filing. I.C. § 31–3504 provides:

An application for or on behalf of a medically indigent person receiving emergency medical services may be made any time within forty-five (45) days following the admission of said person to the hospital furnishing said care. If a person becomes medically indigent subsequent to admission to a hospital or subsequent to receiving treatment by a hospital, an application for the person, or on his be-

---

4. *Carpenter* applied the same rationale to both statutes (I.C. §§ 31–3404 and 31–3504). "Applying the rationale set forth in Part I, *supra,* we hold that failure to provide the notice contem-

plated by I.C. § 31–3504 does not necessarily defeat a claim for benefits." *Carpenter v. Twin Falls County, supra* at 583, 691 P.2d at 1198.

half, shall be made within thirty (30) days of the time the person becomes medically indigent. The chargeable county or counties shall be notified as soon as practicable upon the hospital's obtaining information disclosing that a patient is medically indigent.

I.C. § 31–3504 was addressed by our Court of Appeals in *Caldwell Memorial Hospital v. Board of County Commissioners*, 107 Idaho 33, 684 P.2d 1010 (Ct. App.1984), stating:

> The language of I.C. § 31–3504 is clear. If a person is medically indigent upon admission to the hospital, that person or someone on his behalf must file an application with the board within forty-five days following his admission. If a person becomes medically indigent thereafter, the application must be made within thirty days of his becoming indigent. In addition, the hospital is required to notify the chargeable county when it obtains information disclosing that a patient is indigent. This notice requirement does not, however, extend the time given hospitals for filing an application. It simply directs that notice be given to the county as soon as is practicable. A hospital, of course, can be the applicant. I.C. § 31–3408. In such circumstances, the hospital is bound by the same forty-five and thirty-day time limits.

Clearly, the Hospital's contention that the party making the application for medical indigency benefits has 30 days from the point that they should have, or reasonably could have discovered the indigency, is without merit. As stated by our Court of Appeals in *Caldwell Memorial*, the applicant continues to be bound by the same 45 and 30–day time limits.

The Minidoka County Commissioners found that the Hendersons were "medically indigent" as early as January 1982, and hence the filing of the Hospital's application for benefits goes beyond the statutory time limits and is untimely filed.

I.C. § 31–3502(1) defines medical indigency as follows:

> "Medically indigent" means any person who is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not have income and other resources available to him from whatever source which shall be sufficient to enable the person to pay for necessary medical services.

Upon a county commissioner's denial of medical indigency benefits and appeal to the district court, the standard of review is set forth by I.C. § 67–5215(g)(5) which provides in pertinent part:

> (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . . .
>
> (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or. . . .

In my view, the evidence clearly supports the finding of the county commissioners that the Hendersons were medically indigent as early as January 1982. At the time of the release of the infant from the University of Utah Hospital on August 24, 1981, the Hendersons were indebted to the Hospital for more than $48,000.00. Following the application of insurance benefits, the Hendersons were indebted to the Hospital for an amount in excess of $6,000.00. The Hospital had attempted to collect that balance at the rate of $100.00 per month, however the Hendersons only paid $10.00. The Hendersons' assets consisted only of an encumbered 1976 Toyota vehicle and a paucity of household goods. There was no showing that at any time the Hendersons possessed resources from which such debts could be paid.

The finding by the county commissioners that the Hendersons were medically indigent as early as January 1982, I find to be clearly supported by the evidence, and thus would hold that the district court was in

error in overturning that finding. Hence, I cannot agree with the majority's conclusion that the Hospital's claim for medical indigent benefits was filed within the statutory time limits.

I would thus reverse the decision of the district court and reinstate the decision of the county commissioners.

BISTLINE, Justice, dissenting.

## ON DENIAL OF PETITION FOR REHEARING.

As was expected, a petition for rehearing was filed by the Hospital on receiving the Court's April 27, 1988, majority opinion reversing and remanding. The earlier opinion of April 23, 1987, had affirmed the trial court, and but for the county's petition for rehearing this litigation was *over*.

The basis of the petition for rehearing was a challenge to our reliance on the *Carpenter* case (as was also true of the trial court's decision), which was said to constitute an over-ruling of the Court of Appeals holding in its 1984 *Caldwell* case, discussed and relied upon only by Chief Justice Shepard in his dissenting opinion. The county's brief also argued that the trial court was bound by the Board of County Commissioner's finding that "there is evidence in the record that as early as January of 1982 the Hendersons could be considered as medically indigent." Another contention raised was this Court's failure in not having addressed the challenge to the trial court's allowance of prejudgment interest.[1]

Following oral reargument, in due time our opinion on rehearing issued in April 1988. A virtual reproduction of the earlier opinion, as I note now, again the issue of prejudgment interest was ignored. The only difference between the two opinions was that on this second go-around the majority decided that, "The issue of prejudice having been raised, the matter should have [not been affirmed but] been remanded by the district court to the county commission-

ers as required by I.C. § 67–5215(e) for hearings and findings on the issue of prejudice to the county." (Maj.Op., p. 665, 760 P.2d p. 4.) In accordance therewith the judgment of the district court was now reversed for such proceedings. I can understand Justice Bakes' abiding devotion to and concern for rules of procedure and statutes of procedure, and am not greatly disturbed that on this thought occurring to him that he could feel comfortable. Two other members of the court were not in the least concerned that such an issue had not been raised as an assignment of error in the county-appellant's brief or in its petition and supporting brief on requesting a rehearing.

All of that which I wrote in that regard in my separate concurring 1988 opinion might as well not have been written, *i.e.*, "Nor on appeal to this Court does the county raise such an issue." (Conc.Op., p. 670, 760 P.2d p. 9). "Where there is not a requisite assignment of error, it ill-behooves an appellate court to raise an issue, and then reverse a district court on the basis that it holds error on the self-raised issue. Generally speaking, this is more often a philosophy espoused by Justice Bakes who, more often than not, rather strictly requires counsel to clearly delineate the issues presented." (Conc.Op., p. 671, 760 P.2d p. 10). While I can understand the stance of Justice Bakes, I cannot understand the apathy and indifference of the other two members of the Court which culminated in the issuance of the 1988 opinion remanding this case to the district court for more litigation. One would like to think that, if the prior case law which I cited was not enough to deter such unseemly action, what Justice Bakes himself has stated should have been considered:

> Finally, I am perplexed, as I am sure the parties will be, that the majority has chosen to address the punitive damages issue at all. It was not asserted to be an issue on appeal by either party and was neither briefed nor raised at oral argu-

1. This assertion is true. Our 1987 opinion did not mention that the allowance of prejudgment interest was an issue. A re-examination of the

county-appellant's brief shows that the issue was raised and discussed under ARGUMENT, with citation of authority.

ment, and is thus not before this Court. Our rule against deciding issues on appeal not raised by the parties was described by Justice Bistline in *State v. Nield*, 106 Idaho 665, 669, 682 P.2d 618 (1984), as:

'A principle so well-established as to be unneedful of citation is that an appellate court, including (one would like to think) a state's supreme court, will not consider issues in the abstract, and certainly not issues which are attempted to be raised for the very first time.' 106 Idaho at 669, 682 P.2d 622.

In civil actions the Court has regularly held that, both under earlier statutes and more recently under the rules of appellate procedure, a party who does not raise an issue before the trial court, or who on appeal does not assert an issue as error on appeal, has waived that issue, and the issue will not be considered by this Court. *Cox v. Mountin Vistas, Inc.*, 102 Idaho 714, 639 P.2d 12 (1981); *Mollendorf v. Derry*, 95 Idaho 1, 501 P.2d 199 (1972); *Baldwin v. Ewing*, 69 Idaho 176, 204 P.2d 430 (1949).

*Brown v. Fritz*, 108 Idaho 357, 366–67, 699 P.2d 1371 (footnotes omitted).

The Hospital/Henderson petition for rehearing and supporting brief aptly points to the fault of the court in remanding:

What is most shocking is that this Court has now stepped down from the bench and become an advocate in the case. When the question of whether or not the county had been prejudiced by any delay in notice from the hospital in compliance with

Idaho Code 31–3504 was raised in the District Court, the county was given the opportunity to supplement the record on this point. This procedure is clearly within the court's authority.

SEE I.C. 67–5215 which in part reads as follows:

'___ This section does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law ___

'___ By stipulation of all parties to the review proceedings, the record may be shortened. A party unreasonably refusing to stipulate to limit the record may be taxed by the Court for the additional costs. *The court may require subsequent corrections to the record and may also require or permit additions to the record.*

'(f) ___ In cases of alleged irregularities in procedure before the agency, not shown in the record, *proof thereon may be taken in the court.*

'(g) ___ The court may affirm the decision of the agency or remand the case for further proceedings. *The court may reverse or modify the decision* if substantial rights of the appellant have been prejudiced because of administrative findings, inferences, conclusions or decision are:

'(1) in violation of constitutional or statutory provisions;

'(2) in excess of the statutory authority of the agency;

'(3) made upon unlawful procedure;

'(4) affected by other error of law;

'(5) *clearly erroneous in view of the reliable, probitive, and substantial evidence on the whole record;* or (DIST CRT MEMO DEC. Pg 6 C.R. Pg 29)

'(6) *arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.*' (DIST CRT MEMO DEC. Pg 6 C.R. Pg 29)

Upon applying the facts as contained in the record to the rule of law which had recently been published in the CARPENTER CASE, the District Court concluded that the application in this case, although filed some 34 days after the hospital learned of the filing of the Petition in Bankruptcy, was sufficient under the Carpenter ruling, unless the defendant county could show prejudice by the delay.

The county prosecuting attorney when faced with the ruling of the court that the county had the burden of showing prejudice due to any delayed notice given by the hospital, chose to rely on proof submitted to supplement the record by

way of an Affidavit of Dwayne Smith. *On submitting the supplement to the record, the prosecuting attorney stipulated and agreed that the matter could be decided in the District Court rather than remanding to the commissioners for a hearing.* The prosecuting attorney, in submitting the Affidavit of Mr. Smith sent to the court a cover letter which was attached to the Affidavit. In that letter the prosecuting attorney advised the Court, _ *'I do not anticipate the need for a further evidentiary hearing in this matter unless Mr. Williams desires an opportunity to cross-examine Mr. Smith, or to present other evidence either directly or by affidavit.'*

Brief of University of Utah Hospital on Petition for Rehearing, p. 4. In the same brief it is later stated:

It has been the long-standing rule in Idaho that a party cannot invite error at a trial and then assign it as error on appeal. This precedent has been of long duration not only in Idaho but in a majority of other jurisdictions. See the following:

*DRIESBACH v LYNCH* 259 P2[D] 1039, 74 ID [225] 230 'No objection appears in the record of the first trial by any of the parties to the procedure adopted by the Court and followed by the litigants. Appellants voluntarily consented to the form of procedure adopted by the Court and agreed to the manner in which their rights should be submitted for determination and they will not now be heard on this appeal to challenge such procedure as erroneous. In *FRANK v FRANK*, 47 ID 217, at Page 221, 273 P 943, at Page 944, we said:

'While the opinion in *PENNINGER LATERAL CO. v. CLARK*, 22 ID 397, 126 P 524, no doubt announces the proper rule of procedure in such cases, there is the further rule, firmly established in this state, that where a party has consented to or invited the alleged error, the judgment will not be reversed. *GASKILL v WASHINGTON WATER POWER CO.*, 17 ID 128, 105 P 51; *TRASK v BOISE KING PLACES CO.*, 26 ID 290, 142 P 1073; *DOVER LUMBER CO. v CASE*, 31 ID 276, 170 P 108; *POWERS v SECURITY SAVINGS AND TRUST CO.*, 38 ID 289, 222 P 799. The following statement is found in 4 C.J., Page 714, § 2627, supported by numerous cases: "Where a party voluntarily adopts a certain form of procedure or agrees to the manner in which his rights shall be submitted for determination in the trial court, he will not be permitted to complain on appeal or error, that proceedings had in conformity thereto were erroneous."

'See also, *KLEINSCHMIDT v SCRIBNER*, 54 ID 185, 30 P2 362; *STATE v TAYLOR*, 59 ID 724, 87 P2 454; *RADERMACHER v DANIELS*, 64 ID 376, 133 P2 713.'

Also see *DUNCLICK INC. v UTAH IDAHO CONCRETE PIPE COMPANY* 295 P2 700, 77 ID [499] 502 (1956) where admissions had been invited by the appellant it could not claim error on appeal.

I again direct the court's attention to paragraph 2 in the county attorney's letter to the District court Judge dated December 27, 1984, which letter was written the same day the Affidavit of Dwayne Smith was filed with the Court.

'Minidoka County is prepared to rest on the Affidavit of Mr. Smith concerning the issue of prejudice. I do not anticipate the need for a further evidentiary hearing in this matter unless Mr. Williams desires an opportunity to cross examine Mr. Smith, or to present other evidence either directly or by affidavit. I certainly do not object to Mr. Williams presenting any evidence he may have by way of affidavit.'

That neither party objected to the District court resolving the issue of prejudice is evidenced by the letter from Dean Williams to the District Judge dated January 14, 1985. (see EXHIBIT "B" attached to the Motion for Rehearing) Brief of University of Utah Hospital on Petition for Rehearing, p. 8–10.

Four of us were lax in regard to letting the first and second opinions issue without

addressing the issue of prejudgment interest. Two were lax in allowing an opinion to issue which reversed and remanded on an issue which was not raised, and where the record showed enough to leave little doubt that neither party was asking for a remand for further proceedings.

Except for the fact that one vote is meaningless on a five-member court, I would vote to grant the Hospital/Henderson petition for rehearing in order to take up the yet undecided issue of prejudgment interest—which was not decided at all, and to reconsider whether the final decision should be affirmed, revised, or modified as to prejudgment interest, or reversed and remanded as per the 1988 judgment so concluding and directing. As things now stand both of the parties-litigant have been judicially wronged by this Court. Although two wrongs might be said to equal a right, to leave matters alone does not reflect favorably upon our appellate system.